884 P.2d 228

**Tami Lyn GROAT, a single woman, Plaintiff–Appellee,**

**v.**

**EQUITY AMERICAN INSURANCE CO., Garnishee–Appellant.**

No. 1 CA–CV 92–0063.

Court of Appeals of Arizona, Division 1, Department E.

May 17, 1994.

Review Denied Nov. 29, 1994.

Copple, Chamberlin & Boehm, P.C. by Steven D. Copple, Scott E. Boehm, Tryon, Heller & Rayes, P.C. by Douglas L. Rayes, Phoenix, for plaintiff-appellee.

Whissen, Tidmore & Guendel, P.C. by William K. Whissen, Phoenix, for garnishee-appellant.

## OPINION

GERBER, Judge.

In this appeal, we consider whether the trial court properly struck appellant Equity American Insurance Co.'s ("Equity") answer to a writ of garnishment as a discovery sanction and entered a default judgment against Equity in the full amount of the underlying judgment. For the reasons which follow, we affirm the trial court's rulings in both respects.

## FACTS AND PROCEDURAL HISTORY

On October 23, 1987, appellee Tami Lyn Groat was injured when a car driven by Shawn Ray Howard collided head-on with her car. Just before the accident, Howard, then a minor, had been drinking beer at Eve's Tease, an adult entertainment club. Although Eve's Tease did not sell liquor, customers were allowed to bring liquor onto the premises for personal consumption. Howard did so and was legally intoxicated when his vehicle struck Groat's car.

Eve's Tease was owned by S & F Entertainment ("S & F"), an Arizona corporation. Groat sued S & F and others to recover for her injuries. One of the alleged principals in S & F, Omar Aldabbagh, was insured by Equity, which is incorporated in the Turks and Caicos Islands. The Equity policy, which had a limit of $500,000, covered some of Aldabbagh's businesses. Equity elected to defend S & F under a reservation of rights.

Groat entered into a Damron agreement[1] with S & F in which S & F admitted liability in exchange for Groat's agreement not to execute on the assets of S & F but to attempt instead to collect her judgment from Equity. The trial court eventually awarded her damages of $900,000.

After the judgment was entered, Groat served an application for writ of garnishment on Equity. For its answer, Equity denied that it was indebted to or possessed monies of S & F. The trial court set a hearing on Equity's answer within five days of Groat's request for a hearing as required by Ariz. Rev.Stat.Ann. ("A.R.S.") section 12–1580(B) (Supp.1993). Upon stipulation, the court gave the parties two months to undertake discovery.

Groat noticed a deposition under Rule 30(b)(6), Arizona Rules of Civil Procedure ("Rule"), of "one or more officers, directors or managing agents or other persons designated by Equity" who could testify to the following matters:

1. All applications for insurance for Omar Aldabbagh and/or for property and businesses located at the following addresses: 3522 Grand, 3737 Indian School, 4141 Indian School and 3712 Indian School in Maricopa County;

2. The existence or non-existence of liability insurance coverage for the claim of the plaintiff in this litigation;

3. All correspondence and all decisions regarding reservation of rights and denial of coverage relating to any party to this litigation and relating to Omar Aldabbagh.

Four days before the scheduled deposition, Equity's attorney advised Groat's attorney by letter that no representative of Equity would appear in Arizona for the noticed deposition but that the deposition could be conducted at Equity's offices in the Turks and Caicos Islands or by telephone. Groat then filed a motion to compel the appearance of Equity's representative at a deposition. The trial court denied the motion, leaving Groat to show her inability to effectively depose Equity's representative by telephone.

On November 20, 1990, Groat noticed a Rule 30(b)(6) deposition of Equity to be taken by telephone at 2 p.m. on December 14, 1990. The day before this deposition, Equity's attorney in Phoenix received a memoran-

1. See Damron v. Sledge, 105 Ariz. 151, 460 P.2d 997 (1969).

dum by facsimile from Equity stating that no representative of Equity would be available at the scheduled deposition time because 2 p.m. Arizona time was at the end of the business day in the Turks and Caicos Islands and no one from the company would be available at the scheduled time. On December 14, Equity's attorney advised Groat's attorney by hand-delivered letter that most of Equity's officers were taking extended vacations during the holiday season and thus would not be available for the deposition on December 14. He suggested that the deposition be rescheduled for January.

In January 1991, Groat moved to strike Equity's answer due to Equity's refusal to submit to the December 14 deposition. The trial court declined to strike the answer. Instead, it ordered Equity to appear by telephone for a deposition at 10 a.m. on March 1, 1991. The court further ordered that if Equity, without good cause, failed to participate in the Rule 30(b)(6) deposition as ordered, the court, upon request by Groat, would consider imposing sanctions on Equity, including striking Equity's answer and permitting Groat to take judgment against Equity by default.

On March 1, Equity produced for the deposition 23–year–old office worker Lyndon Gardiner who was not employed by Equity. In fact, Gardiner worked for Windsor Paramount Trust Corporate Service, Ltd. ("Windsor"), which was located in the Turks and Caicos Islands and provided a mailing address, performed administrative services, and accepted service of process for about seventy-five foreign and local companies, including Equity. He was not a director or officer of Equity; his only relationship to Equity was that he worked for Windsor, the registered agent for Equity.

Although Gardiner knew the names of the officers and directors of Equity, he refused to disclose them because, in his view, such disclosure was forbidden by the laws of the Turks and Caicos Islands. Gardiner acknowledged that a copy of the Equity policy issued to Aldabbagh was in the file Windsor kept for Equity. However, he had nothing to do with deciding whether the policy covered Groat's claim.

Gardiner did not make decisions for Equity on whether there was insurance coverage for claims submitted or whether claims should be paid or settled. He said those decisions were made by Equity directors, whom he could not name, and by Burney Watkins, a claims agent who worked for G–W Insurance, the claims manager for Equity. He believed that an Equity director made the decision on coverage for Groat's claim on Watkins' recommendation. Gardiner did not know who made the decision to defend S & F under a reservation of rights nor who at Equity was involved in the decision to deny coverage. Beyond these modest pieces of information, Gardiner could not provide relevant policy data.

Groat filed a motion to strike Equity's answer on the grounds that Equity violated the court's order by refusing to produce for the deposition an officer, director, or managing agent who could testify on the subjects listed in the Rule 30(b)(6) deposition notice. Groat noted that Equity had produced Gardiner, but it also noted that Gardiner was neither an officer, director, or employee of Equity, nor was he able to answer any of the relevant deposition questions.

After argument, the trial court granted the motion to strike Equity's answer and ordered that Groat could proceed to judgment against Equity by default. Pursuant to A.R.S. sections 12–1583 and –1585 (Supp.1993), Groat then filed a motion for entry of default judgment seeking the principal amount of $900,-000 plus interest, costs, and attorneys' fees. Equity moved for reconsideration of the order striking its answer. In that motion, as an attempt to cure its past obstructions, Equity provided the names of its officers and directors and admitted that the decision to deny coverage was made by G–W Insurance.

The trial court denied Equity's motion for reconsideration and indicated that it would enter final judgment against Equity in the principal amount of $900,000. Following entry of judgment, Equity filed a motion for new trial and motion to alter or amend judgment and motion to amend findings and judgment, arguing that the court could not enter judgment in a garnishment proceeding

without holding a garnishment hearing on the merits. Equity also asserted that the amount of the judgment was excessive because the policy limit was $500,000. The trial court denied the motions. Equity timely appealed.

## DISCUSSION

We first consider whether the trial court abused its discretion in striking Equity's answer as a sanction for abuse of discovery. Equity argues that the trial court entered only one order compelling it to participate in the telephone deposition and that by producing Gardiner it in fact did appear and participate in the deposition as ordered. Equity contends that Groat did not argue that the court's order was violated but merely that Gardiner's answers did not measure up to Groat's subjective expectations. It further maintains that the sanction was unwarranted because its representative was prohibited by law from giving some of the answers Groat sought and because the unanswered questions were irrelevant. We do not share Equity's rosy interpretation of the facts.

■ Rule 37(b)(2) provides the sanctions imposable against a party who fails to comply with a discovery order:

> If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> . . . .
>
> (C) An order striking out pleadings or parts thereof, ... or rendering a judgment by default against the disobedient party.

The trial court has broad discretion in imposing these sanctions. *Poleo v. Grandview Equities, Ltd.,* 143 Ariz. 130, 133, 692 P.2d 309, 312 (App.1984); *J–R Constr. Co. v. Paddock Pool Constr. Co.,* 128 Ariz. 343, 344, 625 P.2d 932, 933 (App.1981). This discretion is limited, however, where the ultimate sanctions of dismissal or entry of default judgment are concerned. *Poleo,* 143 Ariz. at 133, 692 P.2d at 312. In particular, dismissal is inappropriate when the failure to comply with a discovery order reflects inability rather than willfulness, bad faith, or fault. *See id.* (citing *Société Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1095–96, 2 L.Ed.2d 1255 (1958)). Thus, we review the record to determine whether the trial court had a reasonable basis for its sanctions. *Id.*

■ Equity maintains that it properly designated a representative to participate in the Rule 30(b)(6) deposition. We disagree. Gardiner was not an officer, director, or managing agent of Equity. Equity's selection of Gardiner to testify did not comply with Rule 30(b)(6) because Gardiner had no knowledge of the specific information Groat sought, i.e., information about applications for insurance for Aldabbagh, his business locations, and decisions regarding reservation of rights and denials of coverage.

■ Providing an uninformed warm body for a Rule 30 deposition approximates providing no one at all. *Gulf Homes, Inc. v. Beron,* 141 Ariz. 624, 688 P.2d 632 (1984), concludes that when a deponent does not answer legitimate questions asked at a deposition, the conduct is the same as if he did not attend at all, allowing the court to impose sanctions pursuant to Rule 37(d). *Id.* at 626, 688 P.2d at 634. *Gulf Homes* noted that the president of the defendant corporation was advised of the subject matter of the questions before the deposition and had the opportunity to prepare for the questions. *Id.* at 629, 688 P.2d at 637. The deponent, however, responded "I don't know" to most of the questions. *Id.* at 626, 688 P.2d at 634. The supreme court agreed with the trial court's finding that his evasion was tantamount to failure to appear, and it affirmed the entry of default judgment in favor of the plaintiffs. *Id.* at 629, 688 P.2d at 637.

Similarly, Equity's designation of Gardiner as its representative for the Rule 30(b)(6) deposition was tantamount to a failure to appear. The transcript of Gardiner's deposition shows that he did not possess knowledge of any of the relevant information sought by Groat, which had been clearly stated in the deposition notice. By designating a representative lacking knowledge of the matters

Groat sought to discover, Equity did not really appear at the deposition at all and thus violated the court's order.

Equity's conduct was also in bad faith. It certainly knew that Gardiner, a non-employee, was hardly in a position to know about the insurance policies and denial of coverage decisions. Equity also knew that someone in Gardiner's position would be precluded by law from revealing virtually anything about the company that could aid Groat in obtaining the information needed to prove coverage for her claim.

Equity pretends to believe that its answer was stricken because Gardiner would not reveal the names of its officers and directors. However, Equity's wrongful conduct lay not in Gardiner's failure to reveal the names of its principals but in Equity's own failure to produce for the deposition someone who could testify about the insurance policy and reasons for denial of coverage. We do not find that the trial court abused its discretion in striking Equity's answer. On the contrary, we find that it had ample reason to do so.

Equity also argues that the trial court erred in omitting a garnishment hearing on the merits. According to Equity, once it filed a timely answer and Groat timely objected, A.R.S. section 12–1584 (Supp.1993) required the trial court to hold an evidentiary hearing to determine whether the writ of garnishment was valid, what amount was due and owing on the underlying judgment, and what amount of nonexempt monies Equity owed to S & F. Equity maintains that striking the garnishee's answer and entering a default judgment does not fit within the conduct required of the trial court under section 12–1584(B).

We have found no authority to support Equity's novel argument that a garnishee's answer is immune from discovery sanctions and default judgment. Because a garnishment proceeding is civil in nature, the Arizona Rules of Civil Procedure, including Rule 37, apply. *See* Ariz.R.Civ.P. 1. The rules of civil procedure "have the force and effect of statute so far as applicable to any case." *Preston v. Denkins*, 94 Ariz. 214, 219 n. 2, 382 P.2d 686, 689 n. 2 (1963). Rules of procedure and statutes are read in conjunction with each other and harmonized whenever possible. *Phoenix of Hartford, Inc. v. Harmony Restaurants, Inc.*, 114 Ariz. 257, 258, 560 P.2d 441, 442 (App.1977).

The discovery sanctions of Rule 37 are as applicable to a garnishment proceeding as they are to any other type of civil case. As the garnishor, Groat had the burden of proving a debt owed by the garnishee to S & F or of monies held by Equity for the benefit of S & F. *See Falcon v. Beverly Hills Mortgage Corp.*, 168 Ariz. 527, 529, 815 P.2d 896, 898 (1991). She could not have met that burden without Equity's cooperation in disclosing information about the relevant insurance policy and reasons for denying coverage. Equity's novel view of A.R.S. section 12–1584(B) means that the striking of a garnishment answer would have no effect at all because the garnishment would always have to proceed to a ruling on the merits even after the answer is stricken. If Equity's view were correct, garnishees could withhold information needed by the garnishor without any negative consequence to the garnishee. Garnishees could, with impunity, prevent garnishors from meeting their burden of proof. Contrary to Equity's view, the statutory garnishment scheme cannot intend to give garnishees such power to subvert discovery and survive its own intransigence. We conclude that Arizona's garnishment statutes do not escape the application of Rule 37.

Once a garnishee's answer has been stricken as a discovery sanction and the trial court proceeds to enter a default judgment, the court must comply with the provisions of A.R.S. section 12–1583 and Rule 55(b). Section 12–1583 provides in part:

If a garnishee fails to answer within the time specified in the writ, the judgment creditor for whom the writ has been issued may petition the court for the issuance of an order requiring the garnishee to appear before the court at a time and place specified in the order to answer the writ or to file and serve a copy of the answer on the judgment creditor for whom the writ has been issued, or on his attorney if the party

is represented by counsel, at least five days before the appearance date. If the garnishee fails to appear or file and serve the answer after the service of the order requiring the appearance in person or answer upon the garnishee, the court may, after judgment has been rendered against the judgment debtor, render judgment by default against the garnishee for the full amount of the judgment against the judgment debtor.

This provision contemplates that a default judgment may be entered against a garnishee. In the ordinary default situation in which the garnishee fails to file an answer, the garnishee would be entitled to notice and an opportunity to answer. *See id.* This procedure matches the procedure outlined in Rule 55(a) for entry of default in other types of civil cases. Once the trial court strikes a garnishee's answer, the garnishee does not then get another opportunity to file an answer under section 12–1583. To allow a second chance would render the discovery sanction meaningless. Furthermore, allowing a garnishee a new opportunity to answer after the first answer is stricken would be inconsistent with Rule 55(a), whose procedure is inapplicable where an answer is stricken as a discovery sanction. *See Hancock v. Arizona Central Credit Union,* 24 Ariz.App. 167, 169, 536 P.2d 1059, 1061 (1975), *overruled on other grounds, Gulf Homes, Inc. v. Beron,* 141 Ariz. 624, 688 P.2d 632 (1984).

 Once the court strikes an answer, as in any other civil case, the garnishee must be given notice of the application for default judgment as required by Rule 55(b)(2). *See Poleo,* 143 Ariz. at 134, 692 P.2d at 313. Groat followed this procedure in requesting a default judgment. The trial court advised both parties of oral argument on the motion. The court's minute entry indicates that at the scheduled time, a hearing was held on both Groat's motion for entry of default judgment and Equity's motion for reconsideration of the order striking its answer. In denying the motion for reconsideration, the court indicated that final judgment would be entered in the amount of $900,000. Because A.R.S. section 12–1583 provides that judgment by default is to be rendered against the garnishee for the full amount of the judgment

against the judgment debtor, the trial court could enter judgment for $900,000, the amount of the judgment against S & F, without being constrained by the policy limit of $500,000.

## CONCLUSION

In summary, we conclude that the trial court correctly struck Equity's answer and entered a default judgment against Equity. Because we affirm the trial court on this basis, we do not reach Equity's arguments on the merits of its case.

■ Groat, the prevailing party on appeal, requests an award of attorneys' fees on appeal under A.R.S. section 12–341.01(A) (1992). Her action, however, does not arise from a contract. There is no contract between her and the original insured. Fees are therefore not available under section 12–341.01(A).

JACOBSON, P.J., and FIDEL, J., concur.