955 P.2d 3

Donna M. SOUZA, Plaintiff/Appellant,

v.

FRED CARRIES CONTRACTS, INC., an Arizona corporation, Defendant/Appellee.

No. 2 CA–CV 96–0260.

Court of Appeals of Arizona,
Division 2, Department B.

April 17, 1997.

Hovell & Heiney, P.C. by William P. Hovell and Clifford L. Heiney, Scottsdale, for Plaintiff/Appellant.

Turley & Swan, P.C. by Christopher J. Bork and Elizabeth Savoini Fitch, Phoenix, for Defendant/Appellee.

## OPINION

PELANDER, Presiding Judge.

■ This case raises an issue of first impression in Arizona: the effect of unintentional destruction of relevant evidence after suit has been filed in a negligence action.[1] Concluding that plaintiff/appellant Donna Souza's failure to preserve crucial evidence precluded her from establishing a *prima facie* case and deprived defendant/appellee Fred Carries Contracts, Inc. (FCCI) of an opportunity to mount an effective defense, the trial court granted summary judgment for FCCI. For the reasons stated below, we reverse and remand.

### FACTS AND PROCEDURAL BACKGROUND

We view the evidence and any reasonable inferences in the light most favorable to the party against whom summary judgment was entered. *Angus Medical Co. v. Digital Equip. Corp.*, 173 Ariz. 159, 840 P.2d 1024 (App.1992). In late January 1992, plaintiff bought a 1982 Ford Mustang from FCCI, a used car dealer. Two weeks later, after she had experienced three tire blow-outs and after FCCI had replaced the car's rear axle assembly[2] with a used unit, plaintiff was injured when she had another blow-out, lost control of her car, and collided head-on with an oncoming vehicle. Plaintiff's car was totaled and towed to a storage yard, where it remained for two and one-half years. In February 1994, plaintiff retained counsel and sued FCCI, alleging it had negligently maintained or repaired the Mustang, resulting in its having a mechanically defective rear end which collapsed and caused the accident.

The storage yard owner ultimately obtained title to the Mustang under Arizona's abandoned vehicle statutes in April 1994. Unbeknownst to the parties, in September 1994, the storage company transferred title to an auto recycler, which had the Mustang destroyed on December 22, 1994, before either party had performed a mechanical inspection of it. In June 1995, FCCI moved for summary judgment and/or dismissal under Ariz.R.Civ.P. 56 and 37, 16 A.R.S. FCCI contended the permanent loss of the car precluded plaintiff from establishing a *prima facie* case, irreparably prejudiced its ability to defend, and warranted the sanction of dismissal for plaintiff's failure, albeit inadvertent, to maintain and preserve the evidence. The trial court granted summary judgment for FCCI, and this appeal followed.

### DISCUSSION

I. Sanction for Destruction of Evidence

In its ruling, the trial court concluded plaintiff had failed to fulfill "her responsibility to assure that crucial evidence was preserved," infringed on FCCI's "right to inspect the vehicle to determine whether or not the alleged defect was in fact the cause of the accident," and thus "deprived [FCCI] of the ability to mount an effective defense." As both parties acknowledge, although the court granted summary judgment for FCCI, its ruling was "tantamount" to ordering a "dismissal sanction" for destruction of evidence. Thus, we must first determine whether the trial court abused its discretion in essentially dismissing the action on that ground.

"The sanction of dismissal, though within the sound discretion of the trial court, is 'harsh and not to be invoked except under extreme circumstances.'" *Austin v. City of Scottsdale*, 140 Ariz. 579, 581, 684 P.2d 151, 153 (1984), *quoting Buchanan v. Jimenez*, 18 Ariz.App. 298, 299, 501 P.2d 567, 568 (1972) (citation omitted). *See also Groat v. Equity Am. Ins. Co.*, 180 Ariz. 342, 884 P.2d 228 (App.1994); *Sears Roebuck & Co. v. Walker*, 127 Ariz. 432, 437, 621 P.2d 938, 943 (App. 1980) ("[T]he range of discretion for dismissal is narrow."); *Golleher v. Horton*, 119 Ariz. 604, 606, 583 P.2d 260, 262 (App.1978) (a trial court's discretion "as to the ultimate sanc-

---

1. Arizona does not recognize a separate tort of spoliation of evidence. *See LaRaia v. Superior Court*, 150 Ariz. 118, 722 P.2d 286 (1986); *Dunlap v. City of Phoenix*, 169 Ariz. 63, 817 P.2d 8 (App.1990).

2. The rear axle assembly generally consists of the central housing and drive gears (the differential) and the axles.

tions of dismissal and/or entry of default judgment[,] has been rather severely limited by the decisions of this state as well as courts of other jurisdictions").

■ FCCI contends plaintiff and her counsel had an affirmative duty to preserve relevant evidence within their control, and their negligent breach of that duty justified dismissal of the case.[3] We agree with the first proposition, but under the circumstances of this case, disagree with the second. Preliminarily, we note that litigants have a duty to preserve evidence which they know, or reasonably should know, " 'is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request.' " *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y.1991), *quoting Wm. T. Thompson Co. v. General Nutrition Corp.*, 593 F.Supp. 1443, 1455 (C.D.Cal.1984). *See also Unigard Security Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363 (9th Cir.1992); *Baliotis v. McNeil*, 870 F.Supp. 1285 (M.D.Pa.1994).

■ Although plaintiff does not dispute her duty to preserve relevant evidence, she maintains the extreme sanction of dismissal is warranted only in cases of intentional destruction of evidence (spoliation). Adopting inflexible, "bright line" rules in this area, in our view, would be ill-advised. Rather, issues concerning destruction of evidence and appropriate sanctions therefor should be decided on a case-by-case basis, considering all relevant factors. *See Stubli v. Big D International Trucks, Inc.*, 107 Nev. 309, 810 P.2d 785 (1991) (setting forth nonexhaustive list of factors relevant to deciding whether dismissal is appropriate sanction). As the Sixth Circuit has noted: "Destruction of potentially relevant evidence obviously occurs along a continuum of fault—ranging from innocence through the degrees of negligence to inten-

tionality. The resulting penalties vary correspondingly." *Welsh v. United States*, 844 F.2d 1239, 1246 (6th Cir.1988). Based on the totality of circumstances in this case, as discussed below, we agree with plaintiff that dismissal was too harsh a sanction for her negligently failing to preserve the Mustang.

■ First, plaintiff did not willfully or volitionally destroy the evidence or even know it was going to be destroyed. Although there is substantial evidence that plaintiff and her counsel were negligent,[4] their failure to retrieve or otherwise preserve the car was unintentional. Generally, an innocent failure to preserve evidence does not warrant the sanction of dismissal. *See, e.g., Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148 (4th Cir.1995); *Beil v. Lakewood Eng'g & Mfg. Co.*, 15 F.3d 546 (6th Cir.1994); *Gumbs v. International Harvester, Inc.*, 718 F.2d 88 (3d Cir.1983); *Headley v. Chrysler Motor Corp.*, 141 F.R.D. 362 (D.Mass.1991); *Beers v. Bayliner Marine Corp.*, 236 Conn. 769, 675 A.2d 829 (1996); *cf. Martin v. Intex Recreational Corp.*, 858 F.Supp. 161 (D.Kan.1994).

Second, this case involves neither failure to comply with a court order nor abuse of discovery or disclosure procedures or requirements. Rule 37(a) and (b), upon which FCCI's motion for dismissal was based, "are designed to compel reasonable discovery and to provide sanctions when there has been a failure to comply with an order compelling discovery." *Sears Roebuck*, 127 Ariz. at 436, 621 P.2d at 942. *See also Birds Int'l Corp. v. Arizona Maintenance Co.*, 135 Ariz. 545, 662 P.2d 1052 (App.1983). Although Rule 37(b)(2) "permits striking a claim when a 'party fails to obey an order to provide or permit discovery,' " *Nesmith v. Superior Court*, 164 Ariz. 70, 72, 790 P.2d 768, 770 (App.1990), in this case, as in *Nesmith*, "there is no clear evidence, and no clear finding, that the plaintiff or [her] counsel engaged in any conduct that would bring the rules that authorize dismissal into play."[5] *Id. Cf. Beil*, 15 F.3d at 552.

---

**3.** The trial court apparently adopted that view, stating: "The plaintiff was not prevented from locating her vehicle and securing it by any conduct of the defendant. The defendant had information which probably should have been disclosed earlier but late or non disclosure did not relieve the plaintiff of her responsibility to assure that crucial evidence was preserved."

**4.** Plaintiff's counsel on appeal is different from her counsel in the trial court.

**5.** We note, however, that parties or potential litigants "are not free to destroy crucial evidence simply because a court order was not issued to preserve the evidence." *Graves v. Daley*, 172 Ill.App.3d 35, 38, 122 Ill.Dec. 420, 422, 526

For example, the record does not indicate that FCCI ever asked plaintiff, formally or informally, to preserve the Mustang or make it available for inspection. Although FCCI's counsel, who was retained in mid-March 1994, knew the Mustang was in a storage yard and realized inspection of it would be necessary, she merely assumed plaintiff and her counsel would maintain it. FCCI's counsel, however, had reason to question that assumption by at least July 1994, when FCCI's automotive expert was erroneously informed by the storage yard that it no longer had the car because it had been sold to a dismantler. In addition, FCCI's president informed its counsel in July that he had received an abandoned vehicle notice for the Mustang in March.

Third, FCCI, as lienholder on the Mustang, had the right, opportunity, and ability to retrieve and preserve the car if it so chose. FCCI knew where the car was being stored after the accident. In fact, FCCI's president twice inspected the car there briefly, in March 1992 and again in February 1994, when he took some photographs. Shortly after being served with process in this action, FCCI received a "Notification of Abandoned Vehicle" from Arizona's Motor Vehicle Division, which indicated the car was still in the storage yard's possession.

It is undisputed that FCCI never performed a post-accident mechanical inspection of the Mustang, and particularly its pertinent rear end assembly. While FCCI understandably did not want to incur the substantial storage charges for re-claiming the totaled car, there is no evidence that it ever inquired about the possibility of, or sought a court order for, performing a full mechanical inspection of the car at the storage yard without having to pay exorbitant fees. *See Beers.* Despite considerable finger-pointing in this case, the trial court found "[t]he evidence was destroyed through the inaction of both parties." The record supports that finding.

Fourth, no evidence establishes that destruction of the Mustang rendered FCCI completely incapable of mounting a defense or irreparably prejudiced its ability to defend. For example, nothing in the record indicates that FCCI's expert would be unable or unwilling to offer opinions on mechanical or causation issues in the case or to otherwise refute the opinions of plaintiff's expert. *Compare Stubli.* Although FCCI now has no opportunity to conduct a thorough mechanical inspection of the car, that lost opportunity is partly due to its own inaction. In addition, an inspection might or might not have supported its defense. Destruction of the Mustang, at any rate, did not totally disarm FCCI of its defense arsenal. It presented substantial, independent evidence, for example, that plaintiff was negligent, both before and at the time of the accident, and that the known "defect" in the rear axle's gears could not have caused the rear wheel to lock or the tire to blow, as plaintiff alleged. In short, even without the car, FCCI has plenty of ammunition left to mount a defense.

 Finally, the record does not indicate the trial court "thoroughly considered other, less severe, sanctions before resorting to the most extreme." *Nesmith,* 164 Ariz. at 72, 790 P.2d at 770. *See also Birds Int'l,* 135 Ariz. at 547, 662 P.2d at 1054 ("Arizona courts have expressed a preference for less drastic sanctions than dismissal."). Without a hearing or a determination on the availability of any lesser sanctions and the nature and extent of harm destruction of the evidence caused FCCI, we cannot say dismissal of the action was appropriate or warranted in this case. *See GNLV Corp. v. Service Control Corp.,* 111 Nev. 866, 869, 900 P.2d 323, 325 (1995) ("[D]ismissal of a case, based upon . . . the destruction or loss of evidence, 'should be used only in extreme situations; if less drastic sanctions are available, they should be

---

N.E.2d 679, 681 (1988). We also recognize that federal courts have the " 'inherent power to regulate litigation, preserve and protect the integrity of proceedings before [them], and sanction parties for abusive practices,' " including "the destruction of evidence, whether that authority is derived from Rule 37 or from their inherent

powers." *Turner,* 142 F.R.D. at 72, *quoting Capellupo v. FMC Corp.,* 126 F.R.D. 545, 551 (D.Minn.1989). *See also Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir.1993). Assuming *arguendo* Arizona courts have such inherent powers, they do not justify dismissal in this case.

utilized.' "). *See also Baliotis.* We do not limit the trial court's exploration and consideration of appropriate, alternative sanctions on remand. *See, e.g., Glover; Shaffer v. RWP Group, Inc.,* 169 F.R.D. 19 (E.D.N.Y. 1996); *Turner; Chapman v. Auto Owners Ins. Co.,* 220 Ga.App. 539, 469 S.E.2d 783 (1996).

## II. *Prima Facie* Case/Summary Judgment

■ Having concluded that dismissal was too harsh a sanction for the inadvertent destruction of evidence in this case, we turn to the other basis for the trial court's granting summary judgment for FCCI: plaintiff could not establish a *prima facie* case of negligence without the vehicle. In a related ruling, the trial court concluded the proffered testimony of plaintiff's expert, who was first retained well after the car had been destroyed, was "no more than speculation" and therefore did not raise a genuine issue of material fact. "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. However, we must reverse and remand for a trial on the merits if reasonable inferences concerning material facts could be resolved in favor of either party." *Dole Food Co., Inc. v. North Carolina Foam Indus., Inc.,* 188 Ariz. 298, 301, 935 P.2d 876, 879 (App.1996) (citations omitted). Although it is a close question, we conclude there are sufficient facts and inferences therefrom to preclude summary judgment in this case.

Plaintiff's complaint, which sounded only in negligence, alleged the Mustang's "rear end collapsed as a result of the negligent maintenance and/or repair of the vehicle by employees of [FCCI], resulting in plaintiff's vehicle swerving to the left over the center of the road." To support that claim, plaintiff had to establish duty, breach of standard of care, proximate cause, and damages. *Smith v. Johnson,* 183 Ariz. 38, 899 P.2d 199 (App. 1995). FCCI does not dispute that it owed a duty of reasonable care to plaintiff, its customer, or that she was injured as a result of the accident. Rather, FCCI essentially contends that on the elements of breach of duty, or defectiveness, and causation, there is in-

sufficient evidence to establish a *prima facie* case. We disagree.

After plaintiff experienced three tire blowouts within a few days after buying the car, FCCI had the car towed to its lot. Based on his inspection, FCCI's mechanic concluded the rear axle assembly was defective and about to fail. After informing plaintiff the rear end had fallen out and would be replaced at no charge, FCCI replaced the rear axle assembly with a used unit it had obtained from an auto parts dealer. FCCI's mechanic then test-drove the car and noted grinding noises from the rear end. He concluded, and informed FCCI's president, that the replacement assembly was no better than the original, that he "did not trust it," and implied that the differential "could be dangerous." Consequently, FCCI decided to replace the rear axle assembly again.

When plaintiff picked up the Mustang later that day, FCCI's mechanic told her he had replaced the rear end but it was "not the right part." According to plaintiff, FCCI's mechanic and president told her the correct part would be available the following week, and the president told her she could take the car and drive it until then. FCCI refused to provide her with a temporary car until the repairs could be made. In his deposition, FCCI's president acknowledged he knew the car was defective when he let plaintiff take it.

Plaintiff drove the Mustang home from the FCCI lot without incident and drove it only a few miles on one other occasion before the accident. She testified that at the time of the accident, she was driving at approximately 40 miles per hour when she heard a "big pop" and her rear driver's side tire blew out. According to plaintiff, there were sparks from that side's rear, the rim was on the pavement, and the car "was out of control." She tried to move to the right, heard another loud noise, and the car then went further out of control. The last thing she recalled was a pair of headlights coming toward her.

In opposing FCCI's motion for summary judgment, plaintiff submitted an affidavit from Stanley Gardner, an accident reconstruction/mechanical engineering expert. Based on his review of the depositions of FCCI's president and mechanic, Gardner

concluded that the Mustang's rear end assembly "was defective and dangerous" and that FCCI's returning the vehicle to plaintiff in that condition was negligent. Viewing the foregoing evidence in the light most favorable to plaintiff, a trier could reasonably infer that FCCI was negligent in releasing the car to her with a defective and potentially dangerous rear axle assembly.

This brings us to the more difficult element of causation. Plaintiff contends the accident occurred because a mechanical defect in the rear axle assembly caused a tire blow-out, which in turn caused her to lose control of the car. Gardner's affidavit supported that theory by stating, *inter alia:*

> It is my opinion to a reasonable degree of mechanical engineering certainty that the defective rear end assembly in this vehicle was the cause in fact of the accident and resulting [*sic*] in plaintiff's injuries. With a defective rear axle condition, the vehicle was unreasonably dangerous.
>
> The possibility of a tire failure causing the accident exists because the left rear tire blew out. It is known that, however, the left rear tire had blown previously on the prior defective rear end assembly[;] thus for this reason, it makes this a much lesser probability in causing this accident. ... The probability of a bearing seizure causing this accident is very high because its seizure would have caused the wheel to freeze, resulting in a blown tire and its subsequent removal from the rim causing the vehicle to be out of control while operating on its rim as occurred in this accident. The unavailability of the car precludes establishing definitely the bearing failure as a cause of the accident....
>
> The probability exists of bearing seizures causing the accident by freezing rear axle shaft and wheels resulting in tire failure and subsequent loss of control. Clearly tire failure may occur from road hazards, but a known and established defective rear axle increased the probability of the latter being the proximate cause of the accident.
>
> There is a high probability, given the description of the noise that the defective rear end made, the noise that the replacement rear end made, the description of the accident, the probable seizure of the wheel bearing, the blowing of the tire, the tire separating from the rim and the vehicle being out of control on the rim, for the accident occurring from rear end failure.
>
> My conclusions are based upon my education, my experience in the field of automotive accident reconstruction, tire and brake failure investigation, and component failure. It is my professional opinion that the driver of the vehicle lost control of the vehicle as a result of tire failure probably resulting from a rear axle failure and the accident would not have occurred but for the replacement of the rear end assembly with a defective rear end assembly....

■■■ Proximate cause issues usually present questions of fact for the jury. *See, e.g., Petolicchio v. Santa Cruz County Fair & Rodeo Ass'n,* 177 Ariz. 256, 866 P.2d 1342 (1994); *Robertson v. Sixpence Inns of America,* 163 Ariz. 539, 789 P.2d 1040 (1990). A plaintiff "need only present probable facts from which the causal relationship reasonably may be inferred." *Robertson,* 163 Ariz. at 546, 789 P.2d at 1047. In addition, to be a proximate cause of the accident, FCCI's conduct "need have contributed only slightly to the injury." *Tellez v. Saban,* 188 Ariz. 165, 172, 933 P.2d 1233, 1240, (App.1996), *citing Ontiveros v. Borak,* 136 Ariz. 500, 667 P.2d 200 (1983).

■■■ Circumstantial evidence of a defect and causation generally is acceptable, particularly when, as here, a motor vehicle is not available for inspection. *See Dietz v. Waller,* 141 Ariz. 107, 110–11, 685 P.2d 744, 747–48 (1984) ("[N]o specific defect need be shown if the evidence, direct or circumstantial, permits the inference that the accident was caused by a defect."); *Rocky Mountain Fire & Cas. Co. v. Biddulph Oldsmobile,* 131 Ariz. 289, 640 P.2d 851 (1982). In our view, that is so even though plaintiff's liability theory is based solely on negligence. As the court stated in *Dietz,* "reasonable minds could differ over the conclusions to be drawn from the evidence presented by [plaintiffs]." 141 Ariz. at 110, 685 P.2d at 747. We reach the same conclusion here.

■ FCCI also maintains, and the trial court ruled, that Gardner's opinions were based on sheer speculation, not facts. According to FCCI, without a mechanical inspection of the Mustang or clear photographs of its relevant parts, a jury would have to engage in complete conjecture to conclude the accident was caused by any particular mechanical defect. FCCI does not challenge Gardner's qualifications or competence in the field of accident reconstruction. Nor does it suggest this is a case in which expert testimony is neither necessary nor helpful. Rather, FCCI contends that, because Gardner never inspected the Mustang, his proffered opinions about defectiveness and causation are without foundation, speculative, and inadmissible.

■ Whether a witness is competent to testify as an expert is a matter primarily for the trial court and largely within its discretion. *Englehart v. Jeep Corp.,* 122 Ariz. 256, 594 P.2d 510 (1979). Generally, however, when a qualified expert testifies that a defendant's negligence or product defect caused or contributed to an accident and resulting injury, that evidence "is sufficient to prevent summary judgment and warrant a trial." *Dole Food Co.,* 188 Ariz. at 306, 935 P.2d at 884. It is well settled that "[e]xpert opinion will not be rejected merely because it touches an ultimate issue or possibly invades the 'province of the jury.'" *Bliss v. Treece,* 134 Ariz. 516, 518, 658 P.2d 169, 171 (1983); Ariz.R.Evid. 704, 17A A.R.S. Even in the absence of clear physical evidence relating to how or why an accident occurred, a qualified expert usually is permitted to render opinions on such topics, so long as they are not based on sheer speculation, unsupported by any pertinent facts. *See Englehart* (accident reconstructionist should have been allowed to give opinion as to whether wheel came off jeep before or after it overturned, even though no survivors or eyewitnesses to the accident). *Compare Shaner v. Tucson Airport Authority, Inc.,* 117 Ariz. 444, 573 P.2d 518 (App.1977).

■ Inspection of a vehicle involved in an accident is not always indispensable for admission of an accident reconstruction expert's opinions as to how and why an accident occurred. *See Roundy v. Stewart,* 140 Ariz. 201, 680 P.2d 1262 (App.1984); *City of Phoenix v. Schroeder,* 1 Ariz.App. 510, 405 P.2d 301 (1965); *cf. Beil,* 15 F.3d at 553 ("Cases are often tried even though a crucial piece of evidence is unavailable. The plaintiff must then rely on other sources of proof to establish what might more easily have been proved if the missing evidence was available."). As the court in *Schroeder* stated: "The fact that the witness testified from photographs was a matter to be considered by the jury in determining what weight to give to his testimony, but it did not make his testimony inadmissible." *Id.* at 516, 405 P.2d at 307.

Based on the foregoing principles, Gardner's affidavit rested on admissible evidence and raised sufficient issues on causation to preclude summary judgment. That the accident could have occurred for reasons other than a mechanical defect in the car, as FCCI contends, does not mean plaintiff failed to establish a *prima facie* case. *See Dietz,* 141 Ariz. at 111, 685 P.2d at 748 ("To prove a product defective, a plaintiff is not required to eliminate with certainty all other possible causes of an accident, but rather to present evidence sufficient to allow the trier of facts to reasonably infer that it was more probable than not that the product was defective."). Similarly, that Gardner's affidavit is not as detailed as FCCI would have liked and contains some assumptions and internal inconsistencies does not render it fatally deficient as a matter of law. In our view, any shortcomings in Gardner's opinions affect their weight but not their admissibility. *Cf. Ulibarri v. Gerstenberger,* 178 Ariz. 151, 162, 871 P.2d 698, 709 (App.1993) (medical expert's affidavit which stated that "defendant caused plaintiff not to remember his acts or to recognize her injuries and that he did so by hypnosis" raised a material fact issue, precluding summary judgment); *Butler v. Wong,* 117 Ariz. 395, 573 P.2d 86 (App.1977).

■ Because reasonable people could agree with plaintiff's liability claim, the trial court erred in granting summary judgment for FCCI. *Orme School v. Reeves,* 166 Ariz. 301, 802 P.2d 1000 (1990). We reject plaintiff's contention, however, that she is entitled

to summary judgment on liability based on Gardner's affidavit. First, plaintiff never moved for summary judgment on that basis and submitted the affidavit only in opposition to FCCI's motion. We will not consider issues and theories which were not presented to the trial court. *Pima County v. Testin,* 173 Ariz. 117, 840 P.2d 293 (App.1992). Second, even if plaintiff had moved for summary judgment, the record clearly presents genuine issues of material fact on plaintiff's claim and FCCI's various defenses thereto.

## CONCLUSION

We reverse the trial court's judgment for FCCI and remand the matter for further proceedings consistent with this opinion.

ESPINOSA, J., and WINTON D. WOODS, J. Pro Tem., concur.