92 P.3d 429

**THOMAS AND KING, INC., a South Carolina corporation, Plaintiff–Appellant,**

v.

**CITY OF PHOENIX, Development Advisory Board, a municipal corporation, Defendant–Appellee.**

No. 1 CA–CV 03–0302.

Court of Appeals of Arizona, Division 1, Department B.

June 29, 2004.

**OPINION**

LANKFORD, Judge.

¶1 Thomas and King, Inc. ("T & K") appeals from the superior court's judgment affirming the City of Phoenix Development Advisory Board's ("Board") denial of T & K's Application for Modification from the Construction Code. The principal issue presented on appeal is whether a portion of a bar in a restaurant with moveable seats must be lowered to allow disabled patrons access pursuant to the 1997 Uniform Building Code ("UBC"). A second issue is whether T & K was entitled to a modification of any such requirement. We affirm the superior court's correct application of the building code provisions and its affirmance of the Board's denial of T & K's application for modification from those code provisions.

¶2 The relevant facts are as follows. T & K builds, owns and operates Applebee's restaurant franchises. Four of its restaurants are located in Phoenix, Arizona. In June of 2001, T & K applied for its fourth building permit from the City of Phoenix ("City"). In response, the City directed T & K to build the restaurant's bar structure in compliance with section 1105.4.4.2 of the UBC. That provision states:

> 1105.4.4.2 Counters and windows. Where customer sales and service counters or windows are provided, a portion of the counter or at least one window shall be accessible.[1]

The City informed T & K that it needed to lower thirty inches of its bar surface to a maximum height of thirty-four inches to comply with this UBC provision.

¶3 T & K filed an Application for Modification from the Construction Code with the City. The modification proposed altering the type of seating available to a disabled patron who wished to sit at the bar of the restaurant. Instead of a permanently lowered section of the bar, T & K proposed mounting a flip-top shelf to the side of the bar. In

Bryan Cave LLP By Steven A. Hirsch, Merritt L. Bingham, Rodney W. Ott, Phoenix, Attorneys for Plaintiff–Appellant.

Peter Van Haren, Office of the City Attorney By Vicki A. Hill, Assistant City Prosecutor, Phoenix, Attorneys for Defendant–Appellee.

---

1. "Accessible" is defined in the UBC as "a site, building, facility or portion thereof that complies with this chapter and that can be approached, entered and used by persons with physical disabilities." UBC § 1102.

addition, T & K would provide other accessible seating, such as telescopic tables, in the bar area. In granting prior permits for Applebee's restaurants in Phoenix, the City's representatives had determined that such accessible seating in the bar or a combination of accessible seating in the bar area and a flip-top accessible counter at the bar satisfied the accessibility requirements of the UBC.

¶ 4 The then Interim Building Official denied T & K's application. The denial rested on the UBC requirement that the maximum amount of accessibility be provided in the design and construction of accessible seating. The UBC mandates that accessible buildings be designed and constructed pursuant to "whichever standard provides the greatest degree of accessibility." UBC § 1101.3; Phoenix, Ariz., Ordinance No. G–4159 at 58 (Feb. 10, 1999) ("Ordinance"). The official's denial stated, in pertinent part:

> In summary, while the solutions you offer to achieve equal accessibility to the bar are allowed by both [the Arizona Disability Act] and [the Americans with Disabilities Act], the building code requirement provides for the highest degree of accessibility of the applicable standards. Therefore, in order to satisfy the intent of the code in this case, your application is denied.
>
> Under Section 104.2.7.3 Modifications, you are required to demonstrate unusual or unreasonable difficulties involved in carrying out the literal provisions of this code. It is the building official's opinion that simply lowering a 30″ section of the bar surface to a maximum height of 34″ and providing required knee clearance is neither unusual nor unreasonable in new construction.

¶ 5 T & K appealed this decision to the Board. After a hearing, the Board voted six to four (with one abstention) to uphold the official's decision. T & K then filed a special action against the City and the Board (collectively the "City defendants") in superior court for review of the Board's decision.

¶ 6 The superior court held an evidentiary hearing. The court ruled in favor of the City defendants, finding that they had applied the correct code provisions in determining whether T & K's bar counter met the accessibility requirements of the UBC. The court also found that the Board did not act illegally, arbitrarily, or capriciously in denying T & K's application for modification. T & K timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (2003).

¶ 7 T & K's appeal raises two questions: (1) Did the superior court properly interpret the UBC? (2) Did the court properly decide that the Board did not act arbitrarily or capriciously or abuse its discretion in denying T & K's application for modification?

¶ 8 In an appeal from the superior court's affirmance of an agency decision, we must decide whether the agency acted illegally, arbitrarily, capriciously, or abused its discretion in rendering the decision. *City of Sierra Vista v. Dir., Ariz. Dep't of Envtl. Quality,* 195 Ariz. 377, 380, ¶ 7, 988 P.2d 162, 165 (App.1999). We examine whether the agency's findings are supported by substantial evidence. *Sigmen v. Ariz. Dep't of Real Estate,* 169 Ariz. 383, 386, 819 P.2d 969, 972 (App.1991). While we give the administrative interpretation of a statute or ordinance some weight, we need not defer to an agency's legal conclusions and may substitute our own. *Id.*

¶ 9 We first consider the applicability of the UBC provisions. These are ordinances, which we interpret using the rules of statutory construction. *Kimble v. City of Page,* 199 Ariz. 562, 565, ¶ 19, 20 P.3d 605, 608 (App.2001). "[Administrative rules and regulations] and statutes are read in conjunction with each other and harmonized whenever possible." *Groat v. Equity Am. Ins. Co.,* 180 Ariz. 342, 347, 884 P.2d 228, 233 (App. 1994). We must avoid interpretations making any language superfluous or redundant. *Guzman v. Guzman,* 175 Ariz. 183, 187, 854 P.2d 1169, 1173 (App.1993).

¶ 10 The City has adopted the UBC as the construction code for building projects in Phoenix. The UBC provides that "buildings shall be accessible to persons with disabilities as required by this chapter and by Arizona Revised Statutes [sections] 41–1492 through 41–1492.12." UBC § 1101.1; Ordinance at 58. The UBC also states that "[f]or a building to

be considered to be accessible, it shall be designed and constructed to the minimum provisions of this chapter and CABO/ANSI[2] A117.1, or in accordance with provisions of State of Arizona Attorney General Administrative Rule R[–]10–3–401 through R–10–3–404, whichever standard provides the greatest degree of accessibility." UBC § 1101.3; Ordinance at 58. In turn, A.R.S. § 41–1492.06(B) (2004) states that "[c]ompliance with titles II and III of the Americans with disabilities act [ADA] and its implementing regulations shall be deemed in compliance with this article."

■ ¶ 11 We must determine, then, which guidelines control: the UBC, the ADA or CABO/ANSI. The UBC has its own applicable provisions and references CABO/ANSI guidelines. The Arizona statute references the ADA. Only when applicable ordinances and statutes conflict would the Arizona statute control. *City of Tempe v. Outdoor Sys., Inc.*, 201 Ariz. 106, 109, ¶ 9, 32 P.3d 31, 34 (App.2001) ("When an ordinance regulates an area that is also regulated by state statute, the ordinance may parallel the statute or even reach beyond the parameters of the statute so long as the ordinance does not conflict with the statute.").

¶ 12 The UBC provisions and the Arizona statute do not conflict. The mandate from the UBC is to ensure greater accessibility. When varying standards for design or construction apply to a particular circumstance, the City must apply the standard which provides the "greatest degree of accessibility." UBC § 1101.3; Ordinance at 58. Indeed, the ADA regulations anticipate that local codes may impose greater accessibility requirements. 28 C.F.R. § 36.103(c). This section provides:

> Other laws. This part does not invalidate or limit the remedies, rights, and procedures of any other Federal laws, or State or local laws (including State common law)

that provide greater or equal protection for the rights of individuals with disabilities or individuals associated with them. *Id.* The ADA also allows departure from the ADA standards "where the alternative designs and technologies used will provide substantially equivalent or greater access to and usability of the facility." 28 C.F.R. pt. 36, app. A, § 2.2. Moreover, A.R.S. § 41–1492.06, the statute making the ADA guidelines applicable, states that "[n]othing in this article is intended to limit the power of any political subdivision of this state to adopt rules or codes that exceed the requirements of this article." A.R.S. § 41–1492.06(D).

¶ 13 The UBC provides the greatest accessibility standards of all applicable provisions. The CABO/ANSI guidelines[3] are concerned only with height of fixed or built-in seating or counters. The guidelines do not address the quantity of such seating in a given area, as does the UBC, so there is no conflict.

¶ 14 Nor does the UBC conflict with the Americans with Disabilities Act Accessibility Guidelines pertaining to dining and drinking establishments. The relevant portion states:

> 5.2 Counters and Bars. Where food or drink is served at counters exceeding 34 in (865 mm) in height for consumption by customers seated on stools or standing at the counter, a portion of the main counter which is 60 in (125 mm) in length minimum shall be provided in compliance with 4.32 or service shall be available at accessible tables within the same area.

28 C.F.R. pt. 36, app. A, § 5.2. Although the ADA thus specifies accessible counters, it also allows alternative accessible seating in the area. UBC § 1105.4.4.2 imposes a higher standard because—as we discuss below—it requires that a section of the counter itself be accessible.

¶ 15 T & K argues, however, that UBC § 1105.4.4.2 is inapplicable to the construction of its bar area.[4] That provision states:

2. CABO/ANSI is the Council of American Building Officials/American National Standards Institute, Inc.

3. CABO/ANSI A117.1, § 4.31.

4. T & K raised this argument in both the Board proceeding and the superior court. Although the

factual section of T & K's opening brief on appeal touches on this issue, the argument section does not address it. Rather, the opening brief focuses on T & K's contention that while UBC § 1105.4.4.2 may be applicable, the City defendants should have approved its application for modification of that code provision. However,

1105.4.4.2 Counters and windows. Where customer sales and service counters or windows are provided, a portion of the counter or at least one window shall be accessible.

T & K notes that this section of the UBC falls under a distinct subheading, § 1105.4.4 entitled "Customer service facilities." That provision sets forth accessibility requirements for fitting rooms (UBC § 1105.4.4.1) and checkout aisles (UBC § 1105.4.4.3) but does not specifically mention drinking and eating establishments. Similarly, the ADA regulation that is a counterpart to UBC § 1105.4.4.2 defines "sales and service counters" to include items such as department store counters, box offices, hotel registration desks, bank teller counters, and other types of counters where merchandise and services are transacted. This ADA definition does not specifically include eating establishments.

¶ 16 Instead, T & K asserts, UBC § 1105.4.2 governs. It provides:

Fixed or built-in seating or tables. When fixed or built-in seating or tables are provided, at least 5 percent, but not less than one, shall be accessible. In dining and drinking establishments, such seating or tables shall be distributed throughout the facility.

T & K argues that its proposal to provide accessible seating at tables in the bar area, along with a flip-top counter at the bar itself, would have fulfilled these requirements.

¶ 17 The Board and the superior court found that *both* UBC § 1105.4.4.2 and § 1105.4.2 applied to T & K's restaurant. The rules of statutory construction mandate that we harmonize provisions and avoid making language redundant. *Groat*, 180 Ariz. at 347, 884 P.2d at 233; *Guzman*, 175 Ariz. at 187, 854 P.2d at 1173. The UBC provisions can be harmonized best by applying both without conflict or redundancy. *See UNUM Life Ins. Co. of Am. v. Craig*, 200 Ariz. 327, 329, ¶ 11, 26 P.3d 510, 512 (2001) ("When two statutes appear to conflict, we will attempt to harmonize their language to give effect to each.") (citation omitted).

¶ 18 Both UBC provisions can be applied without conflict between them. T & K's design for its bar is governed by UBC § 1105.4.4.2 because, as the Board found, the bar is a "service counter." Transactions occur there just as they do at other types of counters, such as those at counters of fast food restaurants. UBC § 1105.4.2 does not apply to the bar itself because that section governs only "fixed or built-in seating or tables," and the bar seats are moveable rather than fixed or built-in.

¶ 19 However, UBC § 1105.4.2 applies because it governs the remainder of the restaurant. The restaurant has fixed tables, including those in the bar area. UBC § 1105.4.2 specifically governs seating at tables. However, the bar counter is not a fixed table. Nor does T & K's bar have fixed seating; it only has moveable seats. Accordingly, UBC § 1105.4.2 applies to any "fixed or built-in seating or tables" located in the restaurant and bar areas, while UBC § 1105.4.4.2 applies to the bar counter itself because it is a counter where sales and service occur.

¶ 20 Harmonizing the UBC provisions in this way not only complies with the rules of statutory construction, but optimizes accessibility consistent with legislative purpose. *See Johnson v. Mohave County*, 206 Ariz. 330, 333, ¶ 11, 78 P.3d 1051, 1054 (App.2003) (when harmonizing statutes, court should construe statute to further legislative intent). *See also Performance Funding, L.L.C. v. Ariz. Pipe Trade Trust Funds*, 203 Ariz. 21, 27, ¶ 26, 49 P.3d 293, 299 (App.2002) (court's interpretation should be the one "most harmonious with the statutory scheme and legislative purpose.") (internal citation and quotation omitted). The court therefore correctly applied both UBC provisions. T & K must make both its bar and the remainder of its restaurant compliant with the UBC.

¶ 21 T & K next argues that the Board improperly denied its request for a modification. The modification would have

---

in its reply brief T & K again argues that UBC § 1105.4.2, not UBC § 1105.4.4.2, applies to the construction of bars. The City defendants dis-

cussed this issue in their answering brief and did not urge waiver, so we address it.

allowed T & K to forgo the lowered bar section in exchange for providing a flip-top shelf on the bar and other accessible seating in the bar area.[5]

¶ 22 The Board did not arbitrarily or capriciously deny T & K a waiver from the UBC provisions. The UBC permits modifications "[w]hen there are unusual or reasonable physical difficulties involved in carrying out the literal provisions of this Code." UBC § 104.2.7.3; Ordinance at 18. A building official is permitted to grant modifications upon a finding that "a special individual reason makes the strict letter of this Code impractical and that the modification is in conformance with the intent and purpose of this Code." *Id.*

¶ 23 T & K argues its modification request should have been granted because of "unusual or unreasonable physical difficulties involved in carrying out the literal provisions of [the UBC]." *Id.* T & K submitted evidence that the lowered section of the bar would provide guests sitting at that portion of the bar greater access to items behind the bar, such as alcohol and bar equipment. The lowered bar also interfered with bar storage and workspace areas, restricting the bartenders' work area. T & K also showed that the lowered bar ultimately constructed at the restaurant had never been used by a patron, and was used only periodically as a tempo-

rary storage area for equipment or dirty dishes.

▇▇▇ ¶ 24 The Board did not abuse its discretion in deciding that T & K was not entitled to a modification. T & K presented evidence showing what the Board could have properly viewed as no more than an inconvenience. The circumstances attending a lowered section of the counter did not necessarily rise to the level of unusual, unreasonable, or impractical, as required by UBC § 104.2.7.3. The Board heard these arguments and rejected them,[6] and we may not "substitute [our] judgment for that of the agency on factual questions or matters involving agency expertise." *Winters v. Ariz. Bd. of Educ.,* 207 Ariz. 173, 176, ¶ 10, 83 P.3d 1114, 1117 (App.2004). Moreover, we note that the authority to grant a modification is discretionary, even when an applicant does meet its burden. "[T]he building official *may* grant modifications for individual cases." UBC § 104.2.7.3; Ordinance at 18 (emphasis added).[7]

▇▇▇ ¶ 25 T & K also contends the Board acted arbitrarily because the City defendants had been inconsistent in their application of UBC § 1105.4.4.2. The City had allowed T & K to build the modified accessible seating in its three other Phoenix restaurants, and had not required a permanently lowered bar.[8] Similarly, T & K demonstrat-

---

5. By the time of the evidentiary hearing in the superior court, T & K had completed construction of the Applebee's at issue and had built the bar with the lowered bar section mandated by the City. However, the parties concede this case is not moot as T & K still wishes to remodel the bar to conform to its modification proposal.

6. One of the Board members observed that T & K's modification requires an understanding by a patron that the alternative accessible seating is available. The member remarked, "a lot of times, people don't know that there is this kind of an avenue. . . . Some people won't pursue that. Some people won't even ask the question."

7. Nor is the fact that T & K's construction was part of a universal design and service operation plan for all of its Applebee's restaurants a sufficiently "special individual reason mak[ing] the strict letter of this Code impractical." UBC § 104.2.7.3. The City was unconvinced that the minor modification of lowering a section of the bar not yet built would be impractical.

8. A 1995 letter from the City's Assistant Development Services Director, Alan Olsen, to T & K's counsel guaranteed that the City would accept accessible tables within the Applebee's bar area as sufficiently compliant with code requirements, and would not mandate a lowered bar. This evidence was before the superior court, but not the Board. A superior court's review of an agency decision can include evidence that the agency did not have. A.R.S. § 12–910(B) (2003) ("Relevant and admissible exhibits and testimony that were not offered during the administrative hearing shall be admitted. . . ."). Nevertheless, the court's "duty is to determine from all the evidence whether the administrative decision is supported by substantial evidence." *Shaffer v. Ariz. State Liquor Bd.,* 197 Ariz. 405, 407, ¶ 2, 4 P.3d 460, 462 (App.2000). Despite this letter, substantial evidence supports the Board's decision to deny T & K a modification. This case brought the confusing issue of the two UBC provisions' applicability to the Board for the first time. Even the superior court judge remarked, "I have a law degree and master's degree in urban plan-

ed that in a sampling of recent restaurant permit applications, fifty-seven percent of the time City field inspectors had failed to require that restaurant bars actually be built with a lowered, accessible section. Instead, they allowed the restaurant to provide alternative accessible seating at tables within the same bar or dining area.

¶ 26 That Phoenix employees previously were inconsistent in their enforcement of the UBC does not demonstrate that the Board acted arbitrarily in its denial of this modification request. The City's failure to consistently enforce the UBC in other cases binds the Board to neither of the two conflicting views of UBC requirements. First, it is not arbitrary for a higher authority to unify the interpretations of a statute by lower-level government employees. Such diversity of opinion and disparity of enforcement is inevitable when human judgment is involved. We see nothing arbitrary or irrational in the Board's adoption of an authoritative interpretation of the UBC that in the future binds the enforcement personnel.

■■■■ ¶ 27 The City's inconsistency not only was not arbitrary, it would not even support equitable estoppel.[9] The essence of estoppel is conduct inconsistent with a later-adopted position. *See Valencia Energy v. Ariz. Dep't of Revenue*, 191 Ariz. 565, 576, ¶ 35, 959 P.2d 1256, 1267 (1998). But the government is entitled to some leeway in how its employees conduct the government's business. The government ordinarily is neither estopped by "the casual acts, advice, or instructions issued by nonsupervisory employees," *id.* at 577, ¶ 36, 959 P.2d at 1268, nor

estopped "from correcting a mistake of law." *Id.* at 579, ¶ 41, 959 P.2d at 1270. Thus, the government generally can enforce a law even if its employees have not always correctly applied it in the past.

■■■■ ¶ 28 Nor is T & K's obligation to conform to the law, as now correctly applied by the City, a true "injury." "[D]etriment [necessary for estoppel] requires a positional change not compelled by law. Thus, no detriment is incurred when the party's only injury is that it must pay taxes legitimately owed under the correct interpretation of the law." *Id.* at 577, ¶ 38, 959 P.2d at 1268. Similarly, it is not arbitrary for the City to expect T & K to comply with the correct interpretation of the UBC, thereby incurring an expense that the law imposes on all new construction.

¶ 29 Accordingly, we affirm the superior court's rulings. The court properly decided that UBC § 1105.4.4.2 applied to the construction of the bar in T & K's restaurant. The court also appropriately determined that the Board's denial of T & K's request for a modification of this code provision was not arbitrary and capricious.

CONCURRING: DONN KESSLER, Judge and DANIEL A. BARKER, Judge.

ning, and I'm not sure which code provision applies." As we discuss elsewhere in this opinion, the Board's denial of the modification was not arbitrary, nor was it estopped from denying the modification.

We also note that T & K did not argue that they relied on this letter. T & K concedes that "the current management of T & K was not made expressly aware of the written assurances the City made in this letter." The City provided the letter during discovery. T & K only mentioned the letter briefly to the superior court as support for its argument of inconsistent enforcement and arbitrariness by the Board.

More importantly, we reject T & K's argument that "the Board remains bound by the terms of the letter." The letter was written in 1995.

However, this case implicates the 1997 UBC, as modified by the City in 1999. The City made important revisions to the UBC: The UBC now mandates that the applicable standard shall be the one that "provides the greatest degree of accessibility." UBC § 1101.3; Ordinance at 58. This mandate was not in the UBC version in effect at the time of the letter. The letter therefore does not discuss the most current version of applicable law. As such, it does not undercut the otherwise substantial evidence supporting the Board's decision.

9. We recognize that T & K did not assert estoppel, but we discuss the estoppel doctrine to illustrate the acceptability of the City's conduct.