128 P.3d 767

Guadalupe FALCON, Deceased, by and through her surviving children Antonio SANDOVAL, Jr.; Guadalupe Pratt; Lydia Sandoval; Francisco Sandoval; Aurora Sandoval; Jose Sandoval; Reynaldo Sandoval; Alfredo Sandoval, Plaintiffs–Appellants,

v.

MARICOPA COUNTY, a body politic; Maricopa Integrated Health Care System, d/b/a Maricopa County Medical Center, an Arizona hospital, Defendants–Appellees.

No. 1 CA–CV 04–0801.

Court of Appeals of Arizona, Division 1, Department E.

Feb. 14, 2006.

Review Granted June 27, 2006.

Robbins & Curtin, P.L.L.C by John M. Curtin, Phoenix, Attorneys for Plaintiffs–Appellants.

Andrew P. Thomas, Maricopa County Attorney by Susan L. Hable, Deputy County Attorney, Richard A. Stewart, Deputy County Attorney, Phoenix, Attorneys for Defendants–Appellees.

## OPINION

TIMMER, Judge.

¶ 1 Can a party intending to sue a county satisfy the notice-of-claim requirement set forth in Arizona Revised Statutes ("A.R.S.") section 12–821.01(A) (2003) by sending the requisite notice to one member of the county board of supervisors? We must answer that question to decide this appeal from the entry of summary judgment against Guadalupe Falcon's surviving children, who sued Maricopa County for medical malpractice after their mother's death in a county-owned medical facility.

¶ 2 For the reasons that follow, we hold that an aggrieved party intending to sue a county can satisfy the notice-of-claim requirement by serving one member of that county's board of supervisors. Because Mrs. Falcon's children provided evidence that they timely served a notice of claim on one member of the Maricopa County Board of Supervisors, the trial court erred by entering summary judgment. We therefore reverse and remand for further proceedings.

## BACKGROUND[1]

¶ 3 Guadalupe Falcon died on April 16, 2002, following surgery at the Maricopa County Medical Center. Mrs. Falcon's surviving children ("Children") believed their mother died as a result of medical malpractice by county employees. Thus, in early

October, one of Mrs. Falcon's sons sent a notice of the malpractice claim by certified mail addressed to "Mr. Andrew Kunasek, Maricopa County Board of Supervisors" at the board's mailing address. Supervisor Kunasek was and remains an elected member of the Maricopa County Board of Supervisors. Joe Jimenez, a Pitney Bowes employee authorized to accept mail for the board and distribute it to addressees, received and signed for the claim on October 4. However, the Children's claim was unaccountably lost, and the County never acted upon it.

¶ 4 On April 11, 2003, the Children filed a medical malpractice/wrongful-death complaint against Maricopa County and others.[2] After filing its answer, the County moved for summary judgment, arguing that the complaint was barred due to the Children's failure to timely serve a notice of claim on the County as required by A.R.S. § 12–821.01(A). The County conceded for purposes of the motion that the Children had sent a proper notice of claim to Supervisor Kunasek within the six-month time frame mandated by § 12–821.01(A). Nevertheless, the County argued that Supervisor Kunasek was not a party authorized to accept such claims for the County, and the Children therefore failed to satisfy § 12–821.01(A). After briefing and oral argument on the motion and on the Children's cross-motion for partial summary judgment on the same issue, the trial court granted the County's motion and denied the cross-motion. After entry of final judgment, this timely appeal followed.

## STANDARD OF REVIEW

¶ 5 We review the court's summary judgment de novo as an issue of law. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003). We will affirm if no disputed issues of material fact exist and the County is entitled to judgment as a matter of law. *Id.* at ¶ 13.

---

1. We view the facts in the light most favorable to Mrs. Falcon's children as the parties against whom summary judgment was entered. *Estate of Hernandez v. Flavio*, 187 Ariz. 506, 509, 930 P.2d 1309, 1312 (1997).

2. Pursuant to the parties' stipulations, the court later dismissed the complaint against all defendants except Maricopa County.

## DISCUSSION

¶ 6 The Children argue that the trial court erred by granting the County's motion for summary judgment because Supervisor Kunasek was authorized to receive their notice of claim as an elected member of the Board of Supervisors. The County responds, and the trial court agreed, that service on only one member of the board is insufficient to fulfill the requirements of A.R.S. § 12–821.01(A). Our resolution of the dispute turns on the interpretation and interplay of the statutes and procedural rule applicable to submission of claims to counties.

¶ 7 Pursuant to A.R.S. § 12–821.01(A), a person having a claim against a public entity or public employee cannot initiate a lawsuit unless he or she first timely notifies the entity or employee of the factual basis underlying the alleged liability and sets forth a specific amount for which the claim may be resolved. To accomplish adequate notification, the claimant must "file claims with the person or persons authorized to accept service for the public entity or public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues." *Id.* Rule 4.1(i), Arizona Rules of Civil Procedure, provides that "[s]ervice upon a county … shall be effected by delivering a copy of the summons and of the pleading to the chief executive officer, the secretary, clerk, or recording officer thereof." No party asserts that Supervisor Kunasek is a secretary, clerk, or recording officer. Therefore, our resolution of this issue turns on the identity of the "chief executive officer" for Maricopa County.

¶ 8 In *Blauvelt v. County of Maricopa*, 160 Ariz. 77, 770 P.2d 381 (App.1988), this court addressed whether delivery of a notice of claim to the Maricopa County Recorder constituted service on the "recording officer" named in Rule 4.1(i).[3] In deciding that such service was insufficient, the court stated that a county's board of supervisors is the entity empowered to direct and compromise all lawsuits involving that county. *Id.* at 79, 770 P.2d at 383 (citing A.R.S. § 11–251(14)). For

this reason, the court held that a county's board of supervisors constitutes that county's "chief executive officer" for purposes of Rule 4.1(i). *Id.* After examining predecessor statutes governing service of process on counties, and noting that an elected county recorder does not serve the board of supervisors, the court concluded that the "recording officer" named in Rule 4.1(i) refers to the recording officer of the board of supervisors rather than the county recorder. *Id.* at 79–80, 770 P.2d at 383–84. Thus, a party intending to submit a claim to a county must serve it on the board of supervisors or the board's secretary, clerk, or recording officer. *Id.* at 80, 770 P.2d at 384.

¶ 9 Maricopa County contests the holding in *Blauvelt*, contending that the chief executive officer of Maricopa County is its "county administrative officer," who is appointed by and serves the Maricopa County Board of Supervisors. But the County does not provide any authority for its position, and we do not discern such support from our review of the law. The statutes governing counties do not provide for county administrative officers, apparently leaving the creation of such positions to the boards of supervisors. Because other counties may not have "administrative officers" with duties similar to Maricopa County's administrative officer, interpreting "chief executive officer" to refer to different entities or persons depending on the identity of the county at issue would create unwarranted confusion. *See Forino v. Ariz. Dep't of Transp.*, 191 Ariz. 77, 80, 952 P.2d 315, 318 (App.1997) ("To discern the legislature's intent, we may consider the effect and consequences of alternative construction."); *see Nielson v. Patterson*, 204 Ariz. 530, 531, ¶ 5, 65 P.3d 911, 912 (2003) (holding rules of procedure interpreted in same manner as statutes).

¶ 10 The *Blauvelt* court's identification of a county's "chief executive officer" as its board of supervisors is further bolstered by a review of A.R.S. § 11–622 (2001), which also governs presentation of claims to counties. *See Groat v. Equity Am. Ins. Co.*, 180 Ariz. 342, 347, 884 P.2d 228, 233 (App.1994)

---

**3.** The *Blauvelt* court interpreted former Rule 4(d)(8). Because this rule is virtually identical to

Rule 4.1(i), we refer to the latter rule to avoid confusion.

("Rules of procedure and statutes are read in conjunction with each other and harmonized whenever possible."). Section 11–622 provides, in relevant part, as follows:

A. A person having a claim against a county shall present to the board of supervisors of the county against which the demand is held an itemized claim executed by the person under penalties of perjury, stating minutely what the claim is for, specifying each item, the date and amount of each item and stating that the claim and each item of the claim is justly due.

. . . .

C. The board of supervisors shall not pay any claim unless demand for payment is made within six months after the last item of the account accrues.

Thus, under § 11–622, the legislature clearly identifies a board of supervisors as the entity that must receive and act on claims against the county. If we were to construe the term "chief executive officer" in Rule 4.1(i), as applied to a county, as someone other than a county board of supervisors, a claimant would be required to serve a claim on the board of supervisors pursuant to § 11–622 and on a different entity or person pursuant to § 12–821.01(A). By identifying the "chief executive officer" of a county as its board of supervisors, we avoid such an odd construction. *See Goulder v. Ariz. Dep't of Transp., Motor Vehicle Div.*, 177 Ariz. 414, 416, 868 P.2d 997, 999 (App.1993) ("Statutes relating to the same subject matter should be read *in pari materia* to determine legislative intent and to maintain harmony.").

¶ 11 For all these reasons, we agree with the *Blauvelt* court that a county board of supervisors serves as a county's chief executive officer for purposes of Rule 4.1(i). We now turn to the pivotal question in this case: How does one serve a county board of supervisors?

■ ¶ 12 The Children argue that service on one member of a board of supervisors complies with Rule 4.1(i). Maricopa County contends that a claimant can only serve the

board of supervisors by serving the chair of the board. The trial court ruled, and our dissenting colleague agrees, that because the board is a collective body, service on the board must be accomplished by serving the entire board.[4] Both parties, the trial court, and the dissent, *see infra* ¶ 21, rely on *Blauvelt* to support their positions. But the court in *Blauvelt* did not consider or decide who must be served in order to perfect service on a board of supervisors, and therefore *Blauvelt* does not aid us in deciding the issue.

¶ 13 The Children also cite *Maricopa County v. Arizona Tax Court*, 162 Ariz. 64, 69, 781 P.2d 41, 46 (App.1989), which indeed noted that service of notices of property tax appeals pursuant to a prior version of Rule 4.1(i) could be accomplished by delivering the notices to "a member of the Maricopa County Board of Supervisors or its clerk." However, the *Maricopa County* court merely cited *Blauvelt* for this contention in passing without providing any analysis. *Id.* Thus, the appropriate manner of serving a board of supervisors in its role as chief executive officer remains an undecided issue, which requires us to employ principles of rule construction to resolve.

¶ 14 The plain language of Rule 4.1(i) does not suggest how to serve a board acting in its capacity as chief executive officer. *See Ariz. Dep't of Revenue v. Superior Court*, 189 Ariz. 49, 52, 938 P.2d 98, 101 (App.1997) (commencing interpretation of rule by examining its plain meaning). Thus, to discern the supreme court's intent we apply secondary principles of construction. *Fuentes v. Fuentes*, 209 Ariz. 51, 55, ¶ 12, 97 P.3d 876, 880 (App.2004).

¶ 15 First, we examine other aspects of Rule 4.1 to glean the supreme court's view on how groups must be served with process. *See Goulder*, 177 Ariz. at 416, 868 P.2d at 999. Rule 4.1(j) applies to service of complaints on governmental entities not mentioned in other subsections of Rule 4.1. If those entities are administered by a group or

---

**4.** Acknowledging the "obvious impracticality of personal service on the entire board," the trial court suggested that Rule 4.1(i) might be read to permit service on the board chair. Because Su-

pervisor Kunasek was not the chair at the time the Children sent the notice of claim, the court did not rule on the viability of that interpretation.

body, a claimant complies with Rule 4.1(j) by serving "any person who is a member of the 'group' or 'body' responsible for the administration of the entity."[5] Similarly, Rule 4.1(k) states that corporations, partnerships and other unincorporated associations must be served through "a partner, an officer, a managing or general agent" or any other authorized agent.[6] Thus, because other subsections of Rule 4.1 evidence the supreme court's intent that a group can be served through one member, and no reason appears why the court would intend a different result under Rule 4.1(i), the most reasonable interpretation of Rule 4.1(i) is that a board of supervisors can be served through one member of the board. *See Goulder,* 177 Ariz. at 416, 868 P.2d at 999 (noting goal of interpretation is to achieve consistency between statutes).

■ ¶ 16 Second, interpreting Rule 4.1(i) to permit service on a board of supervisors in its capacity as chief executive officer through a member of the board comports with our duty to liberally construe procedural rules that do not speak to a set of facts. *Nielson,* 204 Ariz. at 533, ¶ 13, 65 P.3d at 914 ("[W]hen a rule of procedure does not speak to a set of facts or speaks ambiguously, courts should give the rule a liberal construction rather than create a pitfall for the unwary."). The purpose of requiring a claimant to first submit a notice of claim to a governmental entity and/or employee pursuant to A.R.S. § 12–821.01(A) is to afford the government an opportunity to investigate, assess its potential liability and arrive at a settlement. *Howland v. State,* 169 Ariz. 293, 299, 818 P.2d 1169, 1175 (App.1991) (citation omitted) (construing former claims statute). By permitting service of such claims on an elected member of a board of supervisors, who will presumably bring the matter to the attention of the full board,[7] the board is given notice, thereby fulfilling the purpose of § 12–821.01(A). No reason appears why all the elected supervisors must be separately served in order to give notice to the board as a collective body. *Compare* A.R.S. § 11–216(B) (providing that a majority of the board must act to transact business).

¶ 17 In summary, we reaffirm the holding in *Blauvelt* that the chief executive officer of a county for purposes of Rule 4.1(i) is the county's board of supervisors. We additionally hold that a claimant may serve a notice of claim on a county board of supervisors acting in its role as chief executive officer by serving one member of the board. Because the Children presented evidence that they timely served a member of the Maricopa County Board of Supervisors, the trial court

---

**5.** Although the supreme court did not include similar language in Rule 4.1(i), we do not view this omission as an indication of intent that a board of supervisors cannot be served through one member. *See Bigelsen v. Ariz. State Bd. of Med. Exam'rs,* 175 Ariz. 86, 91, 853 P.2d 1133, 1138 (App.1993) (noting that when legislature uses term in certain places within statute and excludes it from other sections court will not read term into section from which term excluded). Unlike subsection (j), subsection (i) does not specifically refer to groups or bodies. Thus, we do not attribute any meaning to the supreme court's failure to set forth the manner of serving such groups in this subsection.

**6.** The dissent contends that Rule 4.1(k) does not assist in resolving the issue before us because partners, officers, and the other listed agents are "authorized to act for the entity." *See infra* ¶ 25. We fail to discern how one's authority to act for an organization affects the authority of that person to receive service of a claim. Indisputably, the board's secretary, clerk, and recording officer are authorized recipients of a claim under Rule 4.1(i), yet they are not authorized to act for the board on the claim absent the latter's direction. *See* A.R.S. § 11–201 ("The powers of a county shall be exercised only by the board of supervisors or by agents and officers acting under its authority and authority of law."); *see also* A.R.S. § 11–622.

**7.** The dissent contends our presumption is ill-founded and that we "leave[ ] too much to chance" by assuming an elected member of the board will bring a claim to the attention of the entire board. *See infra* ¶ 26. We do not think it far-fetched to assume an elected board member, who serves as a county officer, A.R.S. § 11–401(A)(7), would present a claim to the full board for action rather than discarding it. Indeed, the record in this case reflects that legal mail received by Supervisor Kunasek's office is routinely forwarded to the clerk of the Board of Supervisors for handling. Additionally, our presumption is no more precarious than the presumption inherent in Rules 4.1(j) and (k) that members of unspecified government entities, and officers, partners, and agents of private organizations will notify their respective governing authorities upon being served with a claim or process.

erred by entering summary judgment in favor of Maricopa County.

## CONCLUSION

¶ 18 For the foregoing reasons, we reverse the entry of summary judgment and remand for additional proceedings.

SUSAN A. EHRLICH, J., concurs.

OROZCO, P.J., dissenting.

¶ 19 I agree with the majority opinion up to and including paragraph 11, at that point I respectfully dissent for the following reasons.

¶ 20 A.R.S. § 12–821.01.A states that persons who have claims against a public entity shall file a claim with the person or persons authorized to accept service, as authorized in the Arizona Rules of Civil Procedure. Arizona Rule of Civil Procedure 4.1(i) states that service upon a County shall be effected by service on the chief executive officer, the secretary, clerk or recording officer.

¶ 21 In this case, service of the notice of claim could have been made on either the clerk of the board [8] or the chief executive officer of the board. Neither party argues that the clerk of the board was served. Instead, the notice was served on one member of the board of supervisors. That one member was not the chief executive officer. "The chief executive officer . . . is the board of supervisors." *Blauvelt*, 160 Ariz. at 79, 770 P.2d at 383. The board of supervisors is a collective body, in some counties it is made up of three members and in others counties it is made up of five members. A.R.S. § 11–211 (2001). Therefore, I believe that service of the notice on just one member was insufficient.

¶ 22 As stated in *State ex rel. McDougall v. Superior Court*, 173 Ariz. 385, 386, 843 P.2d 1277, 1278 (App.1992), our rules of procedure and statutes should be harmonized wherever possible and read in conjunction with each other. The holding by the majority that only one supervisor need be served does not harmonize Rule 4.1(i) with A.R.S. § 12–821.01.

¶ 23 "To harmonize a rule and statute, a court should consider the purpose each is meant to serve." *Thielking v. Kirschner*, 176 Ariz. 154, 159, 859 P.2d 777, 782 (App. 1993). The purpose of the statute is to give the governmental entity, in this case the board of supervisors, an opportunity to consider the matter and possibly settle the case before suit is filed. *Blauvelt*, 160 Ariz. at 80, 770 P.2d at 384. The serving of only one board member does not serve the purpose of giving a governmental entity an opportunity to consider the matter and possibly settle the case. The service of the claim on only one board member gives that member and only that member notice of a claim. It does not bring the matter to the attention of the collective body.

¶ 24 The majority correctly cites *Bigelsen* for the proposition that when the legislature uses a term in certain places within the statute and excludes it from other sections, a court cannot read that term into the section from which it was excluded. 175 Ariz. at 91, 853 P.2d at 1138. But the majority's holding is reading "a member of the 'group' or 'body' responsible for the administration of the entity" from Rule 4.1(j) into Rule 4.1(i). This is contrary to *Bigelsen* and therefore error.

¶ 25 I also do not find the majority's comparison to Rule 4.1(k) persuasive. This rule applies to service on private organizations and allows service on "a partner, an officer, a managing or general agent" or any other authorized agent. In each case, the person is authorized to act for the entity. An officer in this context is an agent, appointed by the board of directors or a partner who may act for a partnership. An individual supervisor, on the other hand, is generally not authorized to act for the entire Board.

¶ 26 Lastly, Rule 4.1(i) applies to cities, towns and counties. Holding that ·service may validly be completed on an individual member of a governing board has the potential for numerous problems, unintended or otherwise, considering the part-time nature of many of these positions. In ¶ 17 the majority states "[b]y permitting service of such claims on an elected member of a board of supervisors, who will presumably bring the

---

8. A.R.S. § 11–241 (2001) requires the board of supervisors to appoint a clerk of the board.

**150**

matter to the attention of the full board, the board is given notice, thereby fulfilling the purpose of § 12–821.01(A)." Ideally this will happen, but when service of the notice in this case did not bring it to the attention of the full board, how can the majority presume this will always occur? I believe the majority opinion leaves too much to chance and believe a bright line rule of either serving a statutorily mandated position, like the Clerk of the Board or the entire Board of Supervisors, is a better rule.

¶ 27 For those reasons, I respectfully dissent.