NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SARAH STANNARD,
*Plaintiff/Judgment Creditor/Appellee,*

*v.*

CORNER OFFICE AZ INCORPORATED and
INTERSTATE SYSTEMS INSTALLATION AZ, INCORPORATED,
*Garnishees/Appellant*s.

No. 1 CA-CV 14-0148
FILED 4-2-2015

Appeal from the Superior Court in Maricopa County
No. CV2011-054356
The Honorable John R. Doody, Commissioner

**AFFIRMED**

COUNSEL

Sarah Stannard
*Plaintiff/Appellee*

Boates Law Firm, Anthem
By Craighton T. Boates
*Counsel for Garnishees/Appellants*

---

**MEMORANDUM DECISION**

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Michael J. Brown joined.

---

**O R O Z C O**, Judge:

**FACTS AND PROCEDURAL HISTORY**

**¶1** Sarah Stannard obtained a judgment for $366,157.37 jointly and severally against Aaron Ingersoll, Kirby Ingersoll, The Corner Office, LLC. (TCO), and Interstate Systems Installation, LLC. (ISI) on June 27, 2011.[1] One month later, Stannard filed an application for writ of garnishment listing Corner Office AZ, Inc. (COA) as a garnishee by virtue of employing the Ingersolls. Stannard also filed an additional application for writ of garnishment listing Interstate Systems Installation AZ, Inc. (ISIA) as Aaron's employer. After the writs were issued, both garnishees filed answers, which included Aaron's non-exempt earnings. ISIA acknowledged under oath that Aaron was an employee on the date the writ was served, but COA denied under oath employing the Ingersolls.

**¶2** Stannard filed objections to both ISIA's and COA's (hereinafter collectively referred to as Garnishees) non-exempt earnings statements. Stannard contended ISIA paid earnings to Aaron that were not included in the statement and that ISIA was paying him "under the table" in cash and by making checks payable to "cash." She further claimed she had "reason to believe that [COA] has paid and/or will pay earnings" to the Ingersolls.

**¶3** At the hearing on Stannard's objections, Rudy Soto testified that he incorporated Garnishees after TCO and ISI filed for bankruptcy. Soto further testified that he hired Aaron as a manager for both Garnishees, and for which Aaron purportedly was compensated from ISIA only and in the amount of $7.25 an hour.

---

[1] Aaron Ingersoll owned TCO and ISI. However, both entities filed for bankruptcy and two new entities, Corner Office AZ, Inc. and Interstate Systems Installation AZ, Inc., were formed shortly thereafter.

¶4        The trial court found that Rudy Soto was a straw man and that Aaron owned Garnishees to the same extent he owned TCO and ISI. The court sustained Stannard's objections in the amount of $51,777.36 against ISIA and found COA paid $164,009.60 to or for the benefit of Aaron from January 2012 to October 2013[2] and struck COA's answer as false pursuant to Arizona Rule of Civil Procedure 12(f).  Garnishees filed a motion to reconsider, which the trial court denied.  The trial court entered judgments against ISIA for $58,025.17 and COA for $409,827.07.[3] Garnishees timely appealed and we have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21.A.1. and -2101.A.1. (West 2015).[4]

## DISCUSSION

¶5        We review a trial court's garnishment judgment for an abuse of discretion.  *See Cota v. S. Ariz. Bank & Trust Co.*, 17 Ariz. App. 326, 327 (App. 1972).  However, we review issues of statutory construction de novo. *Vortex Corp. v. Denkewicz*, 235 Ariz. 551, 555-56, ¶ 12 (App. 2014).  We defer to the trial court's factual findings so long as they are not clearly erroneous. *John C. Lincoln Hosp. & Health Corp. v. Maricopa Cnty.*, 208 Ariz. 532, 537, ¶ 10 (App. 2004).

### I.    Fraud

¶6        Citing Arizona Rule of Civil Procedure 9(b), Garnishees argue the trial court erred by "research[ing] and rul[ing] upon other issues of Fraud and Alter Ego that were never pled by [Stannard] and not within the

---

[2]      These funds included payments on Aaron's vehicle and insurance, payments through a "Loan to Manager Account," and checks made payable to "Cash" endorsed by Aaron that he deposited into his personal accounts.

[3]      The judgment against ISIA included an award for Stannard's attorney fees, costs, and sanctions in the amount of $5,000.  The judgment against COA included an award for the full outstanding balance due on the June 2, 2011 judgment, attorney fees, expenses, and "additional damages." The trial court noted that COA would be entitled to a credit against the award in the amount of any recovery by Stannard on the June 2, 2011 judgment.

[4]      We cite to the current version of applicable statutes when no revisions material to this decision have since occurred.

purpose of [the] garnishment hearing." Under Rule 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

**¶7** Although Garnishees correctly argue that Stannard never explicitly brought a fraud claim against them, the trial court found:

> Stripped to its bare essentials, the dispute in this case boiled down to whether the forms used by the Garnishees matched the substance of what they purported to be . . . When, for example, Stannard objected that [COA's] verified answer of garnishee falsely denied employing or compensating Aaron Ingersoll, she put [COA] on fair notice – with specific allegations of conduct (circumstances) – that the truth of the answer was at issue and that equitable theories of substance over form were brought into play.

**¶8** A garnishee files an answer under oath and the answer "shall make true answers to the writ." A.R.S. § 12-1579.A. (West 2015). Moreover, a garnishee has a duty "to make a full and complete disclosure of the true facts in regard to it financial relations" with a judgment debtor when served with a writ of garnishment. *See Regan v. First Nat'l. Bank*, 55 Ariz. 320, 326 (1940). Thus, Stannard's objections to Garnishees' non-exempt earnings statements challenged the veracity of their claimed financial relationship with Aaron and put Garnishees on notice of her belief Aaron was being "paid under the table" and was a COA employee.

**¶9** Moreover, the trial court was tasked with determining the amount Stannard was owed on the underlying judgment and the amount of nonexempt monies, if any, Garnishees owed Stannard at the time the writs of garnishment were served. *See* A.R.S. § 12-1584.B. (West 2015). This determination required the trial court to ascertain if Garnishees were holding non-exempt funds and the nature of Aaron's ownership interest, if any, in Garnishees.

**¶10** Furthermore, the trial court stated in the order denying the motion to reconsider:

> But the Court questions the suggestion that the Court had [to] find fraud or alter ego to re-characterize the forms used by the Garnishees to fit the reality of what they were doing. For example, there's no need to find that the loans to Mr. Ingersoll were fraudulent in order to reclassify them as compensation within the meaning of the garnishment statute if that's what

they actually were. That's all that the Court really did. The fact that the evidence also supported fraud and alter ego removes any doubts and enhances the essential justice of the remedies ordered by the Court, all of which were well within the remedies authorized by the garnishment statutes.

Thus, while the court did not need to find fraud or alter ego to come to the conclusion that it did, noting the fact that there was evidence of fraud and alter ego was not error.

## II.    Due Process

¶11         Garnishees argue their due process rights were violated because the trial court entered judgment against them "without the opportunity to submit arguments via memorandum on the issues raised, or even voice those argument[s] at a hearing on Fraud and Alter Ego." They contend that they were not given notice or an opportunity to be heard concerning these issues.

¶12         Due process requires notice and an opportunity to be heard, but is a "flexible concept and calls for such procedural protections as particular situations demand." *Able Distrib. Co., Inc. v. Lampe*, 160 Ariz. 399, 407 (App. 1989). Garnishees were given due process upon receiving notice of Stannard's objections to their non-exempt earning statements and attending a hearing to that effect.

¶13         Garnishees further contend the trial court erred by failing to provide COA an opportunity to be heard after striking its answer. However, due process does not require a trial court to grant a garnishee a hearing after striking its answer for acting in bad faith. *See Groat v. Equity Am. Ins. Co.*, 180 Ariz. 342, 347-48 (App. 1994) (finding that the court needed only to give notice of the application of default judgment after striking garnishee's answer for a bad faith discovery violation). Thus, the trial court did not violate COA's due process rights by striking an answer it deemed to be "false and made with a reckless disregard for [the] truth."

## III.    Purported Default Judgment

¶14         Garnishees next argue that the trial court erred by entering a default judgment against COA without following the procedures required by A.R.S. § 12-1598.13.H, rendering the judgment void. Garnishees contend that the trial court rendered a default judgment against COA by virtue of striking its answer. However, Garnishees mischaracterize the trial court's actions as it never entered a default judgment.

5

¶15        Instead, the court afforded Garnishees an opportunity to be heard, permitted them to present evidence and witnesses, and ultimately concluded:

> [COA's] verified answer of Garnishee falsely denied that Aaron Ingersoll was employed or compensated by [COA]. The remedy for submitting a false answer of garnishee, and for standing on that answer even in the face of what ultimately proved to be a valid objection by [Stannard]- is to make [COA] liable for the full amount of the underlying judgment against the judgment debtors. . . at the time the writ was served on [COA].

Because the trial court did not enter a default judgment, Garnishees' argument is irrelevant.  Finding no error, we affirm the trial court's judgment against COA.

## IV.    Judgment Amount

¶16        Garnishees next contend the trial court erred by awarding Stannard funds COA paid to Aaron before it was served the writ of garnishment.  Specifically, Garnishees argue:

> [T]he Trial Court awarded [Stannard] an amount that included [six] separate payments which were made by [COA] to [Aaron].  A majority of the [six] payments made to [Aaron] by COA, and awarded to [Stannard], occurred in 2012 well before service of the Writ of Garnishment of [COA]. . . Therefore, Garnishee [COA] asserts that at least $140,967.35 was improperly considered earnings by the Trial Court, as this was the amount paid prior to the date that the Writ of Garnishment was served upon [COA].

¶17        Garnishees again mischaracterize the trial court's actions. Although the trial court found COA paid Aaron $164,009.60 from January 2012 to October 2013, it did so only to show that COA's answer contained false information:

> While it is true. . .that many of the payments. . .were made by [COA] <u>before</u> the service of the earnings garnishment on [COA,]. . .the sheer volume of those payments, along with the evidence that Aaron Ingersoll actively managed the affairs of [COA], collectively sustain the Court's finding that Aaron

Ingersoll was in fact employed by [COA], and that therefore the answer of Garnishee [COA] filed. . .was false.

The trial court reiterated this point when it denied Garnishees' motion to reconsider. At no point did the trial court order COA to pay Stannard funds it paid to Aaron prior to being served with the writ of garnishment. Instead, it provided a valid remedy to Stannard in response to COA's decision to file a false answer. *See supra* ¶ 15.

## CONCLUSION

**¶18** For the above mentioned reasons, we affirm the trial court's judgments against Garnishees.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama