488 P.2d 191

**Warren S. STOYER, Appellant,**

v.

**DOCTORS HOSPITAL, INC., an Arizona corporation, and Charles Lofdahl, Appellees.**

**No. I CA–CIV 1456.**

Court of Appeals of Arizona, Division 1, Department A.

Sept. 9, 1971.

Rehearing Denied Oct. 13, 1971.

Review Denied Nov. 23, 1971.

Jones, Hunter, Bartlett & Lerch, P. A., by James E. Hunter, Phoenix, for appellant.

Moore, Romley, Kaplan, Robbins & Green, by Richard W. Abbuhl, Phoenix, for appellee Doctors Hospital, Inc.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Frank A. Parks, Phoenix, for appellee Charles Lofdahl.

STEVENS, Presiding Judge.

The crucial issue in this appeal is whether there was an abuse of judicial discretion in the entry of a judgment of dismissal pursuant to Rule XVI(c) (4) of the Uniform Rules of Practice, 17 A.R.S., arising out of the absence of plaintiff's counsel from a pretrial conference and his failure to join in a pretrial statement pursuant to Rule XVI(c) (1). There were other important matters presented to the trial court but in our judgment the above is the controlling matter.

The appellant, Warren S. Stoyer, was the plaintiff in the Superior Court. The appellees, Doctors Hospital, Inc., an Arizona corporation, and Dr. Charles Lofdahl, a duly licensed and practicing medical doctor,

were the defendants in the Superior Court. The parties will be referred to as the plaintiff, the hospital, and the doctor.

Apparently the plaintiff had sustained an industrial accident and was being treated by the doctor. The doctor performed or aided in the performing of a myelography on 28 April 1966. This medical diagnostic procedure was performed in the hospital. The plaintiff alleges negligence and resulting injury. The suit in question was filed on 25 January 1968. In the Superior Court litigation the plaintiff was represented by Mr. William C. Penn, a duly licensed, practicing attorney.

The file in the Superior Court action discloses extensive discovery by interrogatories and by depositions.

The late Judge Charles N. Ronan, on 17 February 1969, entered the first order setting the cause for trial for 23 June 1969. The order recited, in part, "Counsel are reminded of the pretrial statement required, pursuant to Rule 16(c), as amended, of the Uniform Rules of Practice." There were several resettings on stipulation. The first of these was entered on 12 June 1969 by Judge Ronan. This continuance apparently was to accommodate the attorneys for the doctor. This case was reset for 6 October 1969 and Judge Ronan directed that "all counsel will meet on September 29, 1969, to prepare a pretrial statement and deliver same to the Court the following day." The record is silent as to any effort by any of the attorneys of record to comply with this directive, possibly because of Judge Ronan's untimely death. We are not informed as to the date of his death or as to the date that Judge Marilyn A. Riddel succeeded him as a Judge of the Superior Court.

The next settings were entered by Judge Riddel. These were as follows: On 7 October 1969 the cause was reset for 26 January 1970; and on 26 January 1970 the case was finally reset for 12 May 1970. The record is silent as to an attempt by any of the counsel of record to meet and prepare a Rule XVI(c) (1) pretrial state-

ment prior to the contemplated 26 January 1970 trial setting.

The plaintiff had theretofore responded to extensive interrogatories and had stated that he had not, at the time of his answers to the interrogatories, secured a medical expert to testify in support of his theory of negligence. His answers disclose the names of several doctors who had examined him subsequent to the 28 April 1966 incident. Dr. Lofdahl submitted additional interrogatories on 27 January 1970 requesting information as to the medical expert upon whom the plaintiff would rely. On 20 February 1970 the plaintiff submitted additional interrogatories to the hospital.

As the trial date of 12 May approached, Mr. Penn was deeply involved as counsel in a very complex bankruptcy matter in relation to which the referee in bankruptcy required his personal and continued presence. Mr. Penn's deep involvement in the bankruptcy matter rendered it difficult for defense counsel to contact him and restricted his own preparation for the trial of the case now in question. Efforts were made by the defense to ascertain the name of plaintiff's medical expert. They were informed that the expert would be Dr. Joseph Watterman of Tucson. Mr. Penn believed that certain information had been given to Dr. Watterman but apparently final arrangements had not been made with Dr. Watterman for the review of the evidence or his preparation for testimony. The defense was not able to take his deposition as Dr. Watterman was not prepared to testify at the time he was contacted by defendants' counsel. In addition to Mr. Penn's problems there were problems relative to communication with Dr. Watterman as he was out of the City of Tucson from time to time.

Counsel for the defendants attempted to arrange a Rule XVI(c) (1) conference and Mr. Penn was unable to attend. Counsel for the defendants met and prepared a pretrial statement which stated in part:

"The undersigned attorneys, due to the proximity of trial, elected to prepare a

pretrial stipulation amongst themselves with the understanding that Mr. Penn might, if he sees fit, amend that pretrial stipulation to his choosing."

This was timely filed. Apparently Judge Riddel's trial calendar would not permit the case to be reached before 14 May. As the trial date approached, the plaintiff had not answered the doctor's January 1970 interrogatories and the hospital had not answered the plaintiff's February 1970 interrogatories. The plaintiff had not completed his final arrangements to secure Dr. Watterman's testimony.

In the late afternoon of 12 May counsel for the defendant doctor filed a "motion to compel answers to written interrogatories and motion to preclude use of expert testimony." This motion was presented to the trial judge at 1:05 p. m. on 13 May. All three parties to the action were present by their counsel. The plaintiff then filed his answers to the doctor's January 1970 interrogatories naming Dr. Watterman as the witness in question. The plaintiff announced his readiness to prepare his Rule XVI(c) (1) statement, a supplement to the one prepared earlier by defense counsel. Mr. Penn announced that this would be based upon his previous answers to the interrogatories. There was little information not known to the defendants except the formal presentation of the name of Dr. Watterman and the name of one other doctor whose testimony Mr. Penn announced was not crucial. Mr. Penn advised that all of the exhibits that he intended to rely upon were already known to defense counsel. Most of these were hospital records and other matters theretofore available to and known by the defense.

Dr. Lofdahl's counsel withdrew his motion to compel answers. The hospital filed its answers to the plaintiff's February 1970 interrogatories and the record discloses that there was an argument presented in relation to a motion to dismiss orally presented by the hospital. The motion was based upon Mr. Penn's non-participation in the Rule XVI(c) (1) proceedings. The motion was

filed and bears the Clerk's stamp of 14 May. Mr. Penn filed his supplement to the Rule XVI(c) (1) statement on 14 May. At the 13 May argument counsel for the doctor verbally joined in the hospital's motion to dismiss. The motion to dismiss was granted and a judgment of dismissal was entered. In view of the ruling on the motion to dismiss, the trial court ruled that the motion to exclude the testimony of Dr. Watterman was moot and therefore no ruling was made on that motion. A formal request was made that the trial judge vacate the order and judgment of dismissal which was declined and this appeal followed. The record is silent as to an absence of good faith on the part of Mr. Penn and the record discloses no wilful or purposeful delaying tactics on the part of Mr. Penn.

Arizona's Rules of Civil Procedure, 16 A.R.S., are patterned closely after the federal rules in the matter of discovery. Rule 16 of the Rules of Civil Procedure relates to pretrial conferences.

The Rules of Civil Procedure have been supplemented by the Uniform Rules of Practice found in 17 A.R.S. These were initially adopted on 17 November 1961 and became effective, in general, on 1 December 1961. As adopted these rules were fifteen in number and all of the fifteen rules were applicable to the Superior Court in each of Arizona's fourteen counties. Thereafter and effective 1 February 1967, Rule XVI of the Uniform Rules of Practice was promulgated by the Arizona Supreme Court, a rule relating to the Superior Court in Maricopa County only.

Rule XVI(c) is entitled "pretrial statements and conferences." Subparagraph number (1) thereof specifies in part:

"Counsel who will try the cases for the parties and authorized to make binding stipulations shall personally meet and prepare, in writing over their signatures, to be filed with the court not less than two days prior to trial, a pretrial statement containing the following: * * *."

Following the above-quoted portion of the rule are a number of requirements. These were met by defense counsel in their meeting above-referred to, which meeting Mr. Penn was unable to attend, and were complied with in the 14 May filing of Mr. Penn. This subdivision of the rule concludes as follows:

"No other exhibits or witnesses shall be used during the trial other than those listed and exchanged, *except for good cause shown.* (Emphasis added.)

There is a provision in Rule XVI(c) (2) for an order compelling the attendance of counsel at a Rule XVI(c) (1) conference. Rule XVI(c) (2) also provides in part:

"* * *. If the court is of the opinion that there has been a failure in good faith to meet and prepare the pretrial statement by either or both counsel or 'there is a failure to mete or discuss in good faith at the time fixed by the court, there shall be imposed the penalties as provided by this Rule (c), (4) and (5).

Rule XVI(c) also provides:

"(4) The failure of any attorney for the plaintiff to comply with Rule (c) (1) of this rule will render the party represented by such attorney subject to judgment of dismissal or assignment of the case to the inactive calendar.

"(5) The failure of any attorney for plaintiff or defendant to comply with Rule (c) (1) of this rule shall be grounds for a judgment of contempt to be entered forthwith by minute entry order against the attorney. The judgment of contempt shall not be modified or vacated or any fine imposed remitted except on written motion for good cause. * *."

Apparently the trial judge concluded that Mr. Penn's inability to attend the Rule XVI(c) (1) conference and to participate in the contemplated statement required a judgment of dismissal notwithstanding the presence of good cause or at least an excusable cause for his absence. With this we do not agree.

## VALIDITY OF THE RULE

It is earnestly urged by plaintiff that Rule XVI of the Uniform Rules of Practice, being expressly applicable only to the Superior Court for Maricopa County, is unconstitutional.

In Arizona there is but one Superior Court although each of the fourteen counties has at least one resident judge. See §§ 1, 11 and 13 of Art. VI of the Arizona Constitution. Section 3 of the Article vests the administrative supervision of the several courts which comprise Arizona's "integrated judicial department" in the Supreme Court. Section 5 of the Article states that the Supreme Court shall have:

"5. Power to make rules relative to all procedural matters in any court."

Thus it is argued by the plaintiff that rules which are adopted must be uniform for any court and cannot vary from county to county in relation to the single Superior Court. The Court of Appeals interprets the Arizona Supreme Court's directive which is quoted in the case of State v. Meek, 9 Ariz.App. 149, 450 P.2d 115 (1969), as recognizing that the Court of Appeals, in connection with pending litigation, has the power to declare a Rule of Procedure adopted by the Arizona Supreme Court to be unconstitutional. In the case at bar we are of the opinion that this cause can be resolved without facing the constitutional issue and we decline to rule upon this contention.

## SANCTIONS

The Court of Appeals and the Arizona Supreme Court have had occasion to rule on sanctions which have been imposed under the authority of the Rules of Civil Procedure and sanctions which have been imposed under the authority of the Uniform Rules of Practice. So far as this Court has ascertained the case at bar is the first Arizona appellate decision with reference to Uniform Rule XVI(c). The decisions of the Arizona Supreme Court and of this Court provide precedent in the area of

the imposition of judicial penalties for the failure to adequately or fully comply with procedural guidelines.

The historical background in connection with the case of Zakroff v. May, 8 Ariz. App. 101, 443 P.2d 916 (1968), is that the trial court entered the defendants' default for failure to answer interrogatories. Thereafter the trial court vacated the default. The Court of Appeals upheld the action of the trial court in vacating the previously entered default. The Court characterized the entry of the default as "harsh" and the Court favored less drastic action.

In Carver v. Salt River Valley Water Users' Association, 104 Ariz. 513, 456 P.2d 371 (1969), the Arizona Supreme Court upheld the trial court's order precluding the plaintiff's use of a witness. It is important to note that the Court found that the prior answers to interrogatories were misleading. The Court stated that the exclusion of the use of the witness "[i]s extreme in nature and seldom invoked." Id. at 104 Ariz. 516, 456 P.2d 374.

The Arizona Supreme Court decided the case of Plonkey v. Superior Court, 106 Ariz. 310, 475 P.2d 492, on 16 October 1970, a date following the entry of the judgment of dismissal of the case now at bar. In Plonkey the Arizona Supreme Court directed that the trial court permit the use of a recently discovered medical expert. The expert was discovered, he reviewed the file and he was prepared to testify approximately two weeks before the date set for the trial in a case involving an alleged act of medical malpractice. In Plonkey the plaintiff's position was stronger than is the plaintiff's position in the case at bar in that the expert had reviewed the facts and was prepared to testify whereas in the case at bar at the time of the entry of the order or judgment of dismissal the use of the expert can be classified as somewhat tentative.

■ The opinion we reach from the above case law is that the sanction of dismissal, a far more severe sanction than the sanction of the exclusion of the use of a witness, was harsh and constituted an abuse of judicial discretion. It may well be that the trial judge was of the opinion that Rule XVI(c) (4) vested no discretion in the trial court except the two alternatives therein stated. We cannot construe the rule as being that restrictive.

■ It is our opinion that Rule XVI(c) (4) does not make it mandatory for the trial judge to dismiss the case or in the alternative to place the case on the inactive calendar, even though the rule does not expressly contain a grant of judicial discretion similar to that found in Rule VI(e) of the Uniform Rules of Practice.

The trial court, having decided that dismissal was the sanction to be imposed, did not rule on the motion to preclude the use of Dr. Watterman's testimony and we express no opinion as to what that ruling should have been. The plaintiff would have gone to trial, albeit with a severe handicap, had the trial court directed that the testimony of Dr. Watterman could not be used.

It must be understood that this opinion is not intended to be critical of the trial court. It is the opinion of this Court that Mr. Penn found himself in a critical last-minute position beyond his control. Counsel for the defense understandably were seeking to protect the interests of their clients. In Plonkey the Supreme Court weighed the hardship facing the litigants and ruled in favor of the plaintiff. We deem that a like ruling should have been made in favor of the plaintiff in the case now under consideration.

The issuance of the mandate in relation to this opinion will constitute an order vacating the judgment of dismissal. The privilege of further Rule XVI(c) (1) conferences and further proceedings in relation to the testimony of Dr. Watterman or some other expert are not the subject of this opinion.

The judgment of dismissal is reversed.

GASE and DONOFRIO, JJ., concur.