IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

MAR 29 2012

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| In re the ESTATE OF FRANCES B. LEWIS. | ) ) ) | |
| | ) | |
| SIMON P. LEWIS, | ) ) | 2 CA-CV 2011-0020 DEPARTMENT A |
| Plaintiff/Counterdefendant/ Appellant, | ) ) ) | O P I N I O N |
| v. | ) ) | |
| MARK ALEXANDER LEWIS, individually and as trustee of the Frances B. Lewis Trust, | ) ) ) ) | |
| | ) | |
| Defendant/Counterclaimant/ Appellee. | ) ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PINAL COUNTY

Cause No. S1100PB200900233

Honorable Joseph R. Georgini, Judge

REVERSED AND REMANDED

Simon P. Lewis                                                                 Dallas, Texas
                                                                            In Propria Persona

Eugene J. Lane                                                                        Oracle
                                                              Attorney for Defendant/
                                                      Counterclaimant/Appellee

E C K E R S T R O M, Presiding Judge.

¶1 In this probate action, the trial court sanctioned appellant Simon Lewis by dismissing his complaint, entering a default judgment against him, and overruling his objection to the informal probate of the will of Frances B. Lewis. The court imposed these sanctions after determining that Simon had failed to comply with a court order to personally appear at a scheduled pretrial conference and that Simon had not filed a timely reply to counterclaims by the appellees. On appeal, Simon argues the court abused its discretion in sanctioning him for his nonappearance and penalizing him for the negligence of his attorney. We agree that an abuse of the court's discretion clearly appears from the record before us. *See Camelback Partners v. Weber*, 9 Ariz. App. 452, 454, 453 P.2d 548, 550 (1969). We therefore reverse the court's rulings and remand for further proceedings consistent with this decision.

### Factual and Procedural Background

¶2 The issues presented on appeal require us to set forth the procedural background of this case in some detail. Appellee Mark Lewis, who serves as trustee of the Frances B. Lewis Trust ("the trust") and as personal representative of the Estate of Frances B. Lewis ("the estate"), filed an application for an informal probate of Frances's will in late 2009. Simon, who resides in Texas, filed a pro se objection and request for a formal probate proceeding in March 2010. He also filed a pro se complaint against Mark both as an individual and as trustee. Counsel for the estate, Eugene Lane, filed an answer to the objection. Lane also filed an answer to the complaint on behalf of Mark both individually and as trustee.

2

¶3        In April 2010, the trial court held a status review hearing at Simon's request. Simon appeared telephonically at the hearing. No other parties or counsel were present, however, because Simon apparently had not provided them proper notice of the hearing. The court scheduled another status review hearing for June and gave Simon permission to appear there telephonically.

¶4        In May, attorney Andrew Gorman, of Gorman & Jones, PLC, filed a notice of appearance on behalf of Simon. Gorman moved to amend Simon's objection and complaint and requested to appear telephonically at the upcoming hearing. The trial court granted that unopposed request.

¶5        At the June 2010 review hearing, the trial court reserved ruling on the motions to amend and scheduled a pretrial conference for the following month. The court granted Gorman leave to appear telephonically at the next hearing without any objection. Neither the parties nor the court addressed whether Mark or Simon were required to attend future hearings personally. Before the scheduled pretrial conference took place, Lane filed an objection to Simon's motions to amend. The court overruled the objection and granted the motion to amend the complaint in an order filed June 18, 2010.[1]

¶6        At the July 2010 pretrial conference, Mark and Lane appeared in person; Gorman appeared telephonically on behalf of Simon. Unaware that the trial court had ruled on the motion to amend the complaint, Lane asked that the court sanction Simon for

---

[1]Thereafter, Simon filed a response urging the court to grant both motions, but the court apparently never ruled on the motion to amend the objection.

his failure to adequately answer an interrogatory and clarify his cause of action. The court informed Lane that a copy of the order amending the complaint had been sent to him, according to the court's record, and it had "no idea why [he] didn't get a copy of it." The court thus declined to impose any sanctions and directed Lane to make any future requests for sanctions in compliance with the rules of procedure.

¶7 The following exchange then occurred regarding scheduling:

> THE COURT: . . . . I'm going to set the matter for a half day. I'm going to give it—the firm trial date will be Tuesday, October 5th.
>
> MR. LANE: Okay.
>
> THE COURT: Beginning at 1:00.
>
> Mr. Gorman.
>
> MR. GORMAN: Yes, sir.
>
> THE COURT: That's the date. You got it?
>
> MR. GORMAN: I got it.
>
> MR. LANE: October 5th?
>
> THE COURT: Yes, sir.
>
> Now, we will—I have no problem setting . . . some deadlines for the disclosure, deadlines for filing dispositive motions. Certainly, you have to give me some timeframes right now, if you would like to have for your records.
>
> . . . .
>
> Okay. We'll set one Pretrial Conference. That will be heard on Tuesday, August the 31st at 10:00 in the morning.

4

When Lane indicated he had a scheduling conflict with the proposed pretrial conference, the exchange continued:

> THE COURT: We'll go Tuesday, September 7th at 10:00. There will be no dispositive motions filed after that date. There will be no discovery allowed past that date, Tuesday, September 7th, 10:00 in the morning.
>
> MR. LANE: Okay. Thank you.
>
> THE COURT: Okay. Nothing posts that date, absent a Court order. So whatever discovery you wish to have filed, they'll be filed no later than 10:00, Tuesday, September 7th.
>
> MR. GORMAN: Okay.
>
> MR. LANE: Okay.
>
> THE COURT: We've got our trial date. That is Tuesday, October the 5th at 1:00. And we've got a half a day and that's more than enough time, I think, to address this case.
>
> All right. Thank you, both, and all parties. I do expect Mr. Simon Lewis to appear personally in this courtroom.
>
> MR. GORMAN: Yes, absolutely.

Before the court raised the issue of Simon's presence sua sponte, no discussion had occurred on the topic, and none followed the court's isolated remark. With respect to appearances, the court's July 13, 2010 minute entry contained the following order: "Plaintiff, Simon Lewis shall appear in person and [sic] said hearings." The minute entry indicates it was only distributed to attorneys Lane and Gorman.

¶8 Leading up to the next pretrial conference, Lane filed an answer on July 20, 2010, which contained four counterclaims on behalf of the estate and trust. Gorman

5

never filed a request to appear telephonically at the upcoming hearing, and the trial court never allowed him to so appear. At the scheduled pretrial conference in September 2010, both Lane and Mark appeared in person. No one appeared on behalf of Simon. This prompted the court to engage in the following discussion with Lane:

> THE COURT: . . . . Have a seat, Mr. Lewis and Mr. Lane.
>
> Are we asking, as Mr. Gorman requested, that he be allowed to appear by phone? I probably granted that.
>
> MR. LANE: Your Honor, I believe at the last one you said that they have to make their appearances, both of them.
>
> THE COURT: I did order Mr. Simon Lewis to appear in person. Did I not?
>
> MR. LANE: Yes.
>
> THE COURT: Is Mr. Gorman present?
>
> MR. LANE: No. I haven't seen him. I wouldn't know what he looks like, so I don't know.
>
> As I recall from the—from my recollection is that he [sic] made it abundantly clear that he and the client shall appear at this hearing.
>
> THE COURT: Any word from Mr. Gorman or Mr. Simon Lewis?
>
> MR. LANE: Your Honor, I have had no contacts, whatsoever.

Lane went on to complain at some length about Gorman failing to answer his interrogatory or his counterclaim. Lane concluded by saying he was "willing to hear judgment on the counterclaim."

6

**¶9** The trial court then initiated telephonic contact with Gorman but failed to apprise him of the above discussion. After announcing this was the time set for the pretrial conference, the court had the following discussion with Gorman:

> THE COURT: Good morning. Your client is not here. Mr. Simon Lewis was ordered to appear. There is some debate as to whether you were actually ordered to appear today, sir.
>
> MR. GORMAN: Yes.
>
> THE COURT: Any regards as to where your client might be?
>
> MR. GORMAN: My client is out of state, but I have, as far as scheduling matters go, yeah, I have full reign to go ahead. I have a schedule in front of me.
>
> THE COURT: Mr. Gorman, we were set for trial on October 5th and Mr. [Simon] Lewis was ordered to appear today and the Minute Entry is unclear as to whether you were actually ordered to appear today. But most importantly, Mr. Simon, your client, was ordered to appear today. You all seem a little unprepared for this hearing. You are aware that today was set as a Pretrial Conference?
>
> MR. GORMAN: Yes.
>
> THE COURT: Okay. Again, any explanation as to why your client is not here?
>
> MR. GORMAN: I have none. I don't know. I don't know why he's not there.
>
> THE COURT: He was—you are aware that he was personally—he was ordered to personally appear today, Mr. Gorman?
>
> MR. GORMAN: Yes. It was—yes. That's what we discussed at the last hearing and that's what the Minute Entry states.

> THE COURT: . . . . Last communication you had with your client, Mr. Gorman?
>
> MR. GORMAN: Last communication I had with my client was Friday.[2]
>
> THE COURT: Any reason to believe that he didn't think he had to be here?
>
> MR. GORMAN: No. It's just—it's very difficult for him to travel here in town for this hearing. He's definitely going to be here for the trial, but it's just—it's very difficult.
>
> THE COURT: Okay. Mr. Lane indicated that he has yet to receive a response to his counterclaim.
>
> Has that been filed?
>
> MR. GORMAN: The response to the counterclaim was—our response was sent to Mr. Lewis, my client. We spoke about it on Friday to make a few changes to it and it's going to be filed. Our runner goes on tomorrow. Our runner goes tomorrow.

The court emphasized that it had prohibited any filings after the date of the pretrial conference. The court then ordered Simon's objection "set aside" and "stricken," granted the relief requested in the counterclaims, and vacated the trial date. After directing Lane to submit a formal order, the court explained its reasons further:

> No responsive pleading having been filed[,] Mr. Simon Lewis having failed to appear today, the Court finds that he has waived any defenses at this point. The record was very clear that he was to appear in person. There were no further filings posted 10:00 a.m. this morning.

---

[2]Friday, September 3, 2010. The following Monday, September 6, was the Labor Day holiday. The pretrial conference took place on Tuesday.

¶10      Before the court entered its formal order, Gorman filed a motion for reconsideration. In it, Gorman disclosed that he had been unprepared for the pretrial hearing, he had "overlooked" it due to personal issues that had arisen that morning, and he was "emotionally speechless" when the hearing took place. He also maintained that disruptions to his law practice stemming from his month-long leave of absence during July and August had caused him not to respond to the counterclaim in a timely fashion. As to Simon's nonappearance, the motion stated that Simon was indigent, and while he had obtained travel arrangements for the October trial, "[t]raveling to Arizona . . . for each hearing [was] unduly burdens[ome]." Thus, Gorman asked that the trial court reconsider its rulings in light of the good cause standard set forth in the rules of civil procedure and the availability of more appropriate—and less drastic—sanctions. The court denied the motion without making any findings.

¶11      Before the signed order was entered in November 2010, Simon filed a document in the trial court stating, *inter alia*: "Mr. Gorman has misrepresented me in this case and did not inform me that you required my presence. I apologize to . . . the court for wasting your valuable time due to his incompetence." The court deemed the document a motion for reconsideration and denied the motion without making any findings. Gorman withdrew as counsel of record, and Simon pursued this appeal *in propria persona*.

¶12      Mark argues this court lacks jurisdiction to consider certain aspects of the trial court's ruling because the judgment was not final. Given the overlapping subject matter of the original probate proceeding and the claims and counterclaims presented, as

9

well as the consolidation of all proceedings below, we conclude we have jurisdiction to review the entirety of the court's November 2010 order pursuant to A.R.S. §§ 12-2101(A)(9), 14-3401(A), and *In re Estate of McGathy*, 226 Ariz. 277, ¶¶ 13, 17 & n.1, 246 P.3d 628, 630, 631 & n.1 (2010).

## Discussion

**¶13** On appeal, Simon raises a number of arguments. He again asserts he "was not given notice prior to the Pretrial Conference . . . that the court had ordered his presence" and his attorney made "false statements" in court about Simon's awareness of the need to appear personally. He also claims counsel lied about having prepared a response to the counterclaim and having submitted it to Simon for his review. Simon further complains that the trial court engaged in ex parte communication with Lane. And Simon argues the court denied him due process by dismissing his action and granting counterclaims against him without (1) first warning him of that possible consequence or (2) conducting an evidentiary hearing to determine the cause of his nonappearance and whether he or his attorney was at fault. Imposing these "ultimate sanctions" on the record before it and without conducting a hearing was particularly inappropriate, Simon argues, in light of the court's observation that his attorney was unprepared for the pretrial conference. Because we may decide the issues presented in this appeal solely under the relevant rules of civil procedure, we need not, and do not, address any constitutional or ethical complaints raised by Simon.

**Appearance**

¶14      The trial court cited Simon's failure to personally appear at the pretrial conference as the principal ground for its actions in the September minute entry and as the only basis for its final order. Although this is a probate action, the rules of civil procedure govern this issue. *See* Ariz. R. Prob. P. 3(A).

¶15      Before 1987, Arizona courts could not compel the pretrial appearance of an out-of-state party in a civil matter. *See, e.g.*, *Armstrong v. Hooker*, 135 Ariz. 358, 360, 661 P.2d 208, 210 (App. 1982). That year, however, an amendment of Rule 16(a), Ariz. R. Civ. P.,[3] gave trial courts a discretionary power to order "the parties, the attorneys for the parties and . . . representatives of the parties having authority to settle, to participate, either in person or, with leave of court, by telephone, in a conference . . . before trial" in order to "expedit[e] the disposition of the action" or "improv[e] the quality of the trial through more thorough preparation." Ariz. R. Civ. P. 16(a)(1), (4).[4]

¶16      Rule 16(f) specifies the sanctions for failure to comply with Rule 16(a). It provides:

> If a party or attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate

---

[3] 154 Ariz. XL (1987).

[4] Like the federal rule on which it was patterned, the prior version of Rule 16(a) expressly applied only to attorneys and unrepresented parties. *See* Fed. R. Civ. P. 16(a); 139 Ariz. LVI (1984); *G. Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648, 651 (7th Cir. 1989) (en banc); *In re Rights to Use of Gila River*, 171 Ariz. 230, 242 n.24, 830 P.2d 442, 454 n.24 (1992).

in good faith in a scheduling or pretrial conference or in the preparation of the joint pretrial statement, the judge, upon motion or the judge's own initiative, shall, except upon a showing of good cause, make such orders with regard to such conduct as are just, including, among others, any of the orders provided in Rule 37(b)(2)(B), (C), or (D)[, Ariz. R. Civ. P.] In lieu of or in addition to any other sanction, the judge shall require the party, or the attorney representing the party, or both, to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorneys' fees, or payment of an assessment to the clerk of the court, or both, unless the judge finds that the noncompliance was substantially justified, or that other circumstances make an award of expenses unjust.

Ariz. R. Civ. P. 16(f).[5]

¶17 Being patterned after Rule 16(f), Fed. R. Civ. P., this procedural rule is designed, in part, to enable courts to deal with "disobedient or recalcitrant parties [or] their attorneys" and is intended "to encourage forceful judicial management." Fed. R. Civ. P. 16(f) advisory comm. note to 1983 amend.; *see* Ariz. R. Civ. P. 16(f) state bar comm. note to 1984 amend. (noting sanctions available for "the uncooperative party, the attorney, or both"). "The pretrial conference is a technique to promote the disposition of litigation by cooperation and agreement. The purpose of the sanctions . . . is to coerce this cooperation rather than to dispose of litigation as a form of punishment." *Jancauskas v. Tow Motor Corp.* 261 N.E.2d 753, 755 (Ill. Ct. App. 1970). Ordinarily, our rule's automatic reimbursement provision for "reasonable expenses incurred because of any

---

[5]Much of the language in the current Rule 16(f) has been carried over from 1984. *See* 139 Ariz. LIX (1984). So although it might appear a party can be sanctioned only "if no appearance is made on [his or her] behalf," Ariz. R. Civ. P. 16(f), sanctions are available when a represented party refuses to comply with a court order requiring his or her personal appearance.

noncompliance" with a court order will mitigate the harms caused by simple negligence and oversight. Ariz. R. Civ. P. 16(f).

¶18    Sanctions under Rule 16(f) mirror discovery sanctions under Rule 37(b). Indeed, Rule 16(f) expressly incorporates portions of Rule 37(b). The standards and case law applicable to discovery sanctions under Rule 37(b) therefore apply to sanctions under Rule 16(f). *See* Ariz. R. Civ. P. 16(f) state bar comm. note to 1984 amend.; *Taliaferro v. Taliaferro*, 188 Ariz. 333, 340, 935 P.2d 911, 918 (App. 1996) (characterizing Rule 16(f) as "discovery rule[]"). In general, a trial court has broad power to impose such sanctions. *Groat v. Equity Am. Ins. Co.*, 180 Ariz. 342, 346, 884 P.2d 228, 232 (App. 1994). But when a court imposes severe sanctions such as dismissal, striking a pleading, or entering a default judgment, "its discretion 'is more limited than when it employs lesser sanctions.'" *Roberts v. City of Phx.*, 225 Ariz. 112, ¶ 27, 235 P.3d 265, 272 (App. 2010), *quoting Rivers v. Solley*, 217 Ariz. 528, ¶ 11, 177 P.3d 270, 272 (App. 2008); *see Groat*, 180 Ariz. at 346, 884 P.2d at 232; *Poleo v. Grandview Equities, Ltd.*, 143 Ariz. 130, 133, 692 P.2d 309, 312 (App. 1984). Our state long has had a preference for disposing of actions based on their merits. *AG Rancho Equip. Co. v. Massey-Ferguson, Inc.*, 123 Ariz. 122, 123-24, 598 P.2d 100, 101-02 (1979); *Treadaway v. Meador*, 103 Ariz. 83, 84, 436 P.2d 902, 903 (1968); *Colboch v. Aviation Credit Corp.*, 64 Ariz. 88, 94, 166 P.2d 584, 588 (1946). Drastic sanctions running counter to that policy therefore are disfavored and must be based on a determination of willfulness or bad faith by the party being sanctioned. *Birds Int'l Corp. v. Ariz. Maint. Co.*, 135 Ariz. 545, 547, 662 P.2d 1052, 1054 (App. 1983); *see also* Comment, *Dismissal for Failure to Attend a Pretrial*

13

*Conference and the Use of Sanctions at Preparatory Stages of Litigation*, 72 Yale L.J. 819, 825 (1963) (noting "in most of those cases of noncompliance where the question of wilfulness has been mentioned or litigated, courts have refused to employ the drastic sanctions of dismissal or default judgment in the absence of a finding of a wilful noncompliance"). Fault equivalent to gross negligence also will support such severe sanctions against a noncomplying party. *Birds Int'l Corp.*, 135 Ariz. at 547, 662 P.2d at 1054.

¶19        We have discovered no published Arizona case in which sanctions have been imposed for a represented party's failure to personally appear under the modern Rule 16(a). Other jurisdictions that have considered the topic under comparable rules have required a showing of a willful and contumacious disregard of the court's authority before allowing dismissal or default as a sanction for a party's nonappearance. *See, e.g.*, *Dedmon v. Kelly*, 60 So. 3d 585, 587 (Fla. Ct. App. 2011); *Jancauskas*, 261 N.E.2d at 755; *Sisca v. City of Yonkers*, 806 N.Y.S.2d 234, 235 (App. Div. 2005). Although we do not adopt any such particular standard here, these cases are instructive insofar as they echo our view that "[t]he imposition of the most severe sanctions contemplated by the rules should be reserved for those occasions where the violation is flagrant, persistent or willful or otherwise aggravated." *Insua v. World Wide Air, Inc.*, 582 So. 2d 102, 103 (Fla. Ct. App. 1991); *accord Zakroff v. May*, 8 Ariz. App. 101, 104, 443 P.2d 916, 919 (1968) (court should consider whether "[l]ess serious sanctions . . . could be resorted to in order to accomplish the desired result" and whether "circumstances are so aggravated as to justify the drastic action"). Absent a showing of willfulness or something akin to it, a

14

judgment based on "the failure of a nonresident litigant to appear for [a] pre-trial hearing, where such litigant is represented at the hearing by his attorneys of record," constitutes reversible error. *Bognar v. Cleveland Quarries Co.*, 219 N.E.2d 827, 830-31 (Ohio Ct. App. 1966).

¶20 "When questions arise as to a party's bad faith or willful misconduct in violating a[n] . . . order, fundamental fairness requires that the [trial] court hold an evidentiary hearing prior to entry of default judgment or dismissal." *Robinson v. Higuera*, 157 Ariz. 622, 625, 760 P.2d 622, 625 (App. 1988); *accord Birds Int'l Corp.*, 135 Ariz. at 547, 662 P.2d at 1054. If the record does not support a finding of culpable behavior by the nonappearing party, a trial court abuses its discretion by dismissing a case on this ground. *Dedmon*, 60 So. 3d at 587. Although we review a court's sanctions for an abuse of discretion on appeal, the scrutiny given to severe sanctions will naturally be greater in light of the more restrictive standards for imposing them. *See, e.g.*, *Stoyer v. Doctors Hosp., Inc.*, 15 Ariz. App. 255, 255, 258-59, 488 P.2d 191, 191, 194-95 (1971) (holding trial court abused discretion in dismissing action based on plaintiff's attorney's failure to attend pretrial conference and join pretrial statement); *cf. Brown v. Brown*, 896 So. 2d 573, 575 (Ala. Civ. App. 2004) (procedural rule allowing dismissal based on party's failure to attend pretrial conference "must be carefully exercised" and "'carefully scrutinized'" given the extreme nature of the sanction), *quoting Iverson v. Xpert Tune, Inc.*, 553 So. 2d 82, 87 (Ala. 1989). Hence, courts must be particularly cautious when imposing severe sanctions on a party. *AG Rancho Equip. Co.*, 123 Ariz. at 123, 598 P.2d at 101; *Zakroff*, 8 Ariz. App. at 104, 443 P.2d at 919.

Hearing Requirement

**¶21**        Simon argues the trial court denied him due process by imposing the sanctions here without an evidentiary hearing.  Mark counters that the court heard evidence at the pretrial conference and properly based its decision on that evidence.  We agree that a hearing was required here, as the trial court implicitly understood, because "willfulness or bad faith or fault" was not "clear from the record" in the absence of a further inquiry.  *Robinson*, 157 Ariz. at 624, 760 P.2d at 624.  We nevertheless reject any argument that the September pretrial conference—during which the court heard only from Simon's attorney, rather than Simon himself, and did so only after discussing the clarity of its prior order exclusively with opposing counsel—satisfied the "evidentiary hearing" requirement of *Robinson* or the broader requirements of "fundamental fairness." *Id.* at 625, 760 P.2d at 625.  If a party is to suffer the ultimate sanction of dismissal or default, then fundamental fairness requires, at minimum, that the party "be given notice and an opportunity to appear before the trial court to explain the violation or present any evidence in mitigation."  *Insua*, 582 So. 2d at 103-04.

**¶22**        In fact, a likely cause of Simon's nonappearance, and the reason he offered in his post-hearing motion, was that he never received notice from his attorney of the need to personally attend the pretrial conference.  The inquiry undertaken by the trial court at that conference did not address or resolve this issue adequately, nor could it in Simon's absence.  In fact, a close reading of the transcript reveals that Gorman never stated affirmatively he had told Simon of the need to personally attend the pretrial

16

conference.[6] To the contrary, it appears Gorman himself was surprised to learn of this requirement. He initially informed the court, "My client is out of state, but I have . . . full reign to go ahead." His additional statement that Simon generally had difficulty traveling into town raised a question about Simon's ability to attend that also could have precluded the imposition of sanctions, rather than justify them. In sum, the pretrial conference demonstrated the need for an evidentiary hearing; it did not serve as one.

¶23 In *Jancauskas*, which bears some resemblance to the present case, the Illinois Court of Appeals concluded the trial court had abused its discretion by entering a dismissal and refusing to set aside that order when the record established only that the attorney representing the party was unprepared for the hearing and could offer no explanation for his out-of-town client's nonappearance. 261 N.E.2d at 754-55. The record here was similarly inadequate to support a finding that Simon's nonappearance was willful or made in bad faith. We do not remand for a rehearing on this particular issue, however, for the reasons set forth below.

Sanctions

¶24 The nonaggravated circumstances of this case and the ambiguous nature of the trial court's order to appear would not permit the drastic sanctions imposed here even if Simon had been told that his presence at the pretrial hearing was required. *See Zakroff*, 8 Ariz. App. at 104, 443 P.2d at 919. Simon was an out-of-state party who was represented by counsel of record. Before the July hearing, Simon had appeared before

_____

[6]The minute entry, which states Gorman "avow[ed] that [Simon] was aware that he was supposed to appear in person at this hearing," does not accurately reflect the statements made there, though the mistake is an understandable one.

17

the court by telephone, as had his attorney, without any objection. At the July hearing, neither the court nor the appellees had discussed Simon's in-person presence before the court made its closing remark that it "expect[ed] . . . Simon Lewis to appear personally in this courtroom." That statement was not phrased as an order and was accompanied by nothing clarifying when, specifically, Simon was "expect[ed]" to appear. Indeed, because the comment about Simon's presence immediately followed the court's reiteration of the October trial date, the court's remark reasonably could have been interpreted, in context, as referring only to the trial, as Simon urges on appeal.

¶25 The ungrammatical mandate in the minute entry order for Simon to "appear in court and [sic] said hearings" failed to lucidly articulate the trial court's intentions on the topic. Had the minute entry been free of typographical errors, it presumably would have said "at said hearings." But the minute entry order, like the hearing, lacked clarity. Moreover, the record suggests that Simon never personally received the minute entry order. Dismissal and default based on Simon's nonappearance therefore simply were not available under the facts of this case.

¶26 Moreover, we note the trial court did not impose the mandatory sanction of payment of "reasonable expenses" for noncompliance with its order under Rule 16(f). *See* Ariz. R. Civ. P. 16(f) state bar comm. note to 1984 amend. This failure suggests either that Simon's noncompliance was "substantially justified," in which case sanctions were not permitted, Ariz. R. Civ. P. 16(f), or that the court abused its discretion by failing to consider even mandated and presumptive lesser sanctions than dismissal and default. *See Kohler v. Kohler*, 211 Ariz. 106, ¶ 2, 118 P.3d 621, 622 (App. 2005) (court abuses

18

discretion by committing error of law in process of exercising discretion); *Birds Int'l Corp.*, 135 Ariz. at 546-47, 662 P.2d at 1053-54 (hearing required, in part, to allow court "to determine most appropriate sanction"). We therefore reverse the court's sanctions based on Simon's nonappearance.

**Untimely Reply**

¶27 As noted, Simon also challenges the sanctions imposed here to the extent they were based on his failure to respond in a timely fashion. Mark maintains the trial court did not abuse its discretion in granting default judgment against Simon based on his failure to file a timely reply to the counterclaims. Simon did not file a response within the twenty days provided by Rule 12(a)(1)(A), Ariz. R. Civ. P., as Mark points out. But Mark never applied for an entry of default pursuant to Rule 55(a), Ariz. R. Civ. P. Rather, in ex parte communication with the court at the start of the September hearing, Lane complained that Simon "never answered my counterclaim" and stated "we're willing to hear judgment on the counterclaim."

¶28 Default pursuant to Rule 55(a) is a procedurally distinct mechanism that requires notice to the defaulting party, thereby allowing a further opportunity to cure the problem. *See Corbet v. Superior Court*, 165 Ariz. 245, 247, 798 P.2d 383, 385 (App. 1990). Rule 55(a) requires a party to submit a "written application to the clerk" for an entry of default before a default judgment can be obtained. Rule 55(a)(1) provides that notice must be given to the defaulting party. And Rule 55(a)(4) specifies that this prior notice provision uniquely applies to "a default sought and entered pursuant to this rule." In effect, Rule 55(a) "allow[s] entry of default only upon adequate notice to the

19

defaulting party." *Ruiz v. Lopez*, 225 Ariz. 217, ¶ 18, 236 P.3d 444, 449 (App. 2010). Here, no application was made, and no notice was given. Thus, default did not occur under this rule.

¶29 "Normally, where a default judgment has been taken, the neglect of an attorney is attributed to the client, and only when the attorney's omission or failure to act is legally excusable may relief be obtained." *Robinson*, 157 Ariz. at 624, 760 P.2d at 624. By contrast, when default is imposed as a sanction under Rule 37(b), the fault of an attorney is not attributed to a client. *Treadaway*, 103 Ariz. at 84, 436 P.2d at 903; *Robinson*, 157 Ariz. at 624, 760 P.2d at 624. "Where the party is not guilty of misconduct . . . he should not suffer default as a result of his counsel's guilty conduct." *Robinson*, 157 Ariz. at 625, 760 P.2d at 625.

¶30 Here, Gorman admitted his own neglect in failing to timely file a reply to the counterclaims.[7] A significant factual dispute exists as to whether Simon contributed at all to that untimely filing. Gorman stated he had sent a response to Simon for his review, but Gorman never informed the trial court when the response had been sent. No evidence supported a finding that Simon was a grossly negligent or willful party to the delayed reply. *See Robinson*, 157 Ariz. at 623, 760 P.2d at 623; *Birds Int'l Corp.*, 135 Ariz. at 547, 662 P.2d at 1054. Accordingly, the "[e]ntry of a default judgment on this

---

[7]Gorman's motion for reconsideration argued his neglect was excusable, however, because his firm had attempted to "keep up with th[e] litigation" during his leave of absence, Lane had "ma[de] no reference to a counterclaim" in the caption of his answer, and a reply to the counterclaims had been prepared "immediately" upon their discovery. *See* Ariz. R. Civ. P. 7(a) ("There shall be . . . a reply to a counterclaim denominated as such . . . .").

record was error." *Robinson*, 157 Ariz. at 625, 760 P.2d at 625.  To the extent any issues remain on remand regarding the untimely filing of the reply, the court must "decide where the truth lay" in a proper evidentiary hearing; it must determine whether and what type of sanctions are appropriate; and it must decide who, if anyone, will bear those sanctions.  *Birds Int'l Corp.*, 135 Ariz. at 547-48, 662 P.2d at 1054-55.

### Other Issues

¶31        Mark asks this court to consider affirming the trial court's rulings based on two additional grounds not cited by the court as reasons for imposing sanctions: unpreparedness for the pretrial conference and the failure to answer an interrogatory. Assuming arguendo such practice is appropriate when reviewing sanctions, we would find no basis to affirm the trial court on the record before us.  Indeed, numerous reasons preclude us from doing so.

¶32        First, the nonuniform interrogatory in question apparently preceded the amendment of Simon's complaint, and the trial court refused during the July hearing to impose any sanctions on the basis of the allegedly "vague, inconclusive" response to it.[8] Second, neither Gorman's unpreparedness at the pretrial conference nor his failure to answer an interrogatory would be attributable to Simon, and the record does not indicate Simon contributed to his attorney's dereliction or unpreparedness.  *See Robinson*, 157 Ariz. at 624-25, 760 P.2d at 624-25.  Third, the trial court stated Gorman was "a little unprepared," which falls short of the "substantially unprepared" standard for imposing sanctions under Rule 16(f).  Fourth, an isolated instance of unpreparedness would not

---

[8]The interrogatory is not included in the record on appeal.

justify the imposition of severe sanctions such as dismissal and default, absent aggravating circumstances or prejudice not present in this case. *See Zakroff*, 8 Ariz. App. at 104, 443 P.2d at 919. Apart from Gorman's unpreparedness for the September pretrial conference, his motions display a high level of professionalism, and his appearances before that hearing showed him to be engaged in the proceedings and grounded in the law.

¶33 Lane's filings, in contrast, did not comply with the rules of procedure in basic respects. For example, he failed to properly designate his counterclaims as such in the caption of his answer, *see* Ariz. R. Civ. P. 7(a), 10(a), which might have caused them to be overlooked, and he did not allege a specific amount of damages in his pleading for three of his four counterclaims, thereby precluding entry of a default judgment without a hearing to determine damages. *See* Ariz. R. Civ. P. 8(g), 55(b)(1), (2).

¶34 Furthermore, because the possibility of a default judgment presents a significant, if unlikely, issue that might recur upon remand, we note that because Simon "appeared" through his counsel in this action, within the meaning of Rule 55(b), default without a hearing was inappropriate. A defendant "appear[s]" for purposes of Rule 55(b) if he or she submits to the court's jurisdiction "in a manner showing knowledge of the suit and an intention to appear." *Tarr v. Superior Court*, 142 Ariz. 371, 374, 690 P.2d 90, 93 (App. 1984). "An appearance does not prevent a party from being in default for failure to plead or otherwise defend," *Rogers v. Tapo*, 72 Ariz. 53, 57, 230 P.2d 522, 525 (1951), but it does require the entry of default judgment to occur by hearing as provided

22

in Rule 55(b)(2). An evidentiary hearing was therefore necessary to support an award of damages under Rule 55(b)(2) as to all claims.

¶35 Although Mark suggests default judgment without a hearing was appropriate because his claims were either for liquidated damages or damages that could be "made certain" by extrinsic evidence, we have held that "[a] claim is not for a 'sum certain' merely because it is for a specific amount." *Beyerle Sand & Gravel, Inc. v. Martinez*, 118 Ariz. 60, 63, 574 P.2d 853, 856 (App. 1977). If this were not the case, "almost any unliquidated claim [could] be transformed into a claim for a sum certain merely by placing a monetary amount on the item of claimed damage even though such amount has not been fixed, settled, or agreed upon by the parties and regardless of the nature of the claim." *Id.* In addition, we note that the purpose of a hearing under Rule 55(b)(2) is to "determine the amount of damages[,] . . . establish the truth of any averment by evidence or . . . make an investigation of any other matter." Here, Mark sought a determination of damages, not a mathematical "computation" of damages under Rule 55(b)(1) as may occur, for example, with claims involving financial instruments or contracts that include liquidated damage clauses. Accordingly, we reject his argument that no hearing was required here.

**Disposition**

¶36 For the foregoing reasons, the trial court's rulings are reversed, and the matter is remanded for further proceedings. The pleadings as they existed before the September pretrial conference are reinstated. *See Camelback Partners*, 9 Ariz. App. at 454, 453 P.2d at 550. Before imposing any sanctions in this case, the trial court is

directed to conduct "a proper evidentiary hearing" consistent with *Robinson*, 157 Ariz. at 625, 760 P.2d at 625, and Rule 16(f), during which Simon may appear, present evidence, and potentially elicit testimony from his former attorney, Andrew Gorman.

/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:

/s/ *Joseph W. Howard*
JOSEPH W. HOWARD, Chief Judge

/s/ *J. William Brammer, Jr.*
J. WILLIAM BRAMMER, JR., Judge

24